VICTOR CZECZOTKA ET AL. *v.* DONALD J. ROODE, JR., ET AL.
(AC 32025)

Lavine, Robinson and Lavery, Js.

Argued April 21—officially released July 12, 2011

*Lloyd L. Langhammer*, with whom, on the brief, was *Kaitlyn M. Pechie*, for the appellant (named defendant).

*William McCoy*, for the appellants (defendant Maureen Poitras et al.).

*Jon C. Leary*, for the appellees (plaintiffs).

LAVERY, J. This action for the reformation of a deed concerns a parcel of land in Griswold. The named defendant, Donald J. Roode, Jr.,[1] appeals from the judgment of the trial court in favor of the plaintiffs, Victor Czeczotka, Lucy Lefevre and Murray Czeczotka. On appeal, the defendant claims that the court improperly failed to reform a deed in the parties' chains of title based on its conclusion that he had failed to establish, by clear and convincing proof, that the deed was the result of a mutual mistake.[2] We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. The crux of the parties' dispute is the issue of whether an administrator's deed was intended to convey a certain parcel in Griswold known as 166 Colonel Brown Road (disputed parcel). The disputed parcel consists of approximately twenty-nine acres of unimproved

---

[1] The adult children of the plaintiffs' deceased brother, Julian Czeczotka, were named as codefendants in the plaintiffs' original complaint. Although these adult children, Maureen Poitras, Jan Czeczotka and Gary Czeczotka, (codefendants) actively participated in the trial, they are not parties to the present appeal. We therefore refer in this opinion to Donald J. Roode, Jr., as the defendant.

[2] The defendant also raised a claim of adverse possession in his preliminary statement of the issues. The defendant, however, has failed to advance any substantive analysis or discussion of precedent related to this claim, thereby rendering it inadequately briefed. It is well established that "[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *State* v. *Claudio C.*, 125 Conn. App. 588, 600, 11 A.3d 1086 (2010), cert. denied, 300 Conn. 910, 12 A.3d 1005 (2011). Accordingly, we decline to review this claim.

land and abuts a separate parcel owned by the defendant. The disputed parcel is also located in close proximity to several parcels owned by the plaintiffs.

On August 23, 1939, the defendant's grandmother, Carrie Roode, executed an administrator's deed conveying certain real property from the estate of her deceased sister, Bessie H. Burton, to Victor M. Czeczotka (plaintiffs' father). The deed purports to convey a single parcel containing approximately seventy acres, which previously had been divided into two parcels owned by two different persons. The deed makes reference to the two prior deeds by which Burton's predecessor in interest had acquired title to those two parcels (prior deeds).[3] Each of these prior deeds purports to convey a single parcel containing approximately seventy acres, which it describes by reference to landmarks, compass directions and abutting landowners. The disputed parcel is situated within the boundaries of the parcel described by the first of these prior deeds to be recorded in the Griswold land records.

Between 1939 and 1948, the plaintiffs' father executed a total of four mortgages affecting the property that he had acquired under the terms of the administrator's deed. The parties introduced two mortgage deeds, which are the products of the first and fourth mortgage transactions, respectively, as full exhibits at trial. Both mortgage deeds are similar in that they purport to

---

[3] The administrator's deed, which is common to both parties' chains of title, describes the conveyed property as follows: "A certain tract or parcel of land with the dwelling house, barn and other buildings thereon, situate[d] on the easterly and westerly sides of the highway leading from Pachaug to the highway leading from Norwich to Voluntown, within the Town of Griswold, and containing about seventy acres, more or less, and being the same premises which were conveyed to Albert F. Burton by two separate deeds, one dated April 4th, 1866, recorded in [the] . . . Griswold Land Records . . . and the other dated April 4, 1866, recorded in the said Griswold Land Records . . . to which deeds reference may be had for a more particular description . . . ."

encumber all of the property that the plaintiffs' father had acquired by way of the administrator's deed. The mortgage deeds are dissimilar, however, in that the earlier mortgage deed contains only a basic description of the property that it purports to encumber,[4] while the latter contains a more detailed property description. More specifically, the latter mortgage deed describes the encumbered property as two distinct parcels and makes use of landmarks, compass directions and references to abutting landowners in order to describe those parcels.[5] The disputed parcel is not included within the boundaries of either parcel.

On January 15, 1966, the plaintiffs' father died intestate. On November 2, 1966, the Probate Court issued a certificate of descent that purports to convey to the plaintiffs, as well as to their now deceased siblings, Julian Czeczotka[6] and Irene Hlastava,[7] all of the property that their father had acquired under the terms of the administrator's deed, excluding a parcel that he previously had conveyed.[8] The certificate of descent

---

[4] The first mortgage deed, which was executed contemporaneously with the administrator's deed and recorded in the Griswold land records on September 7, 1939, contains the following description of the property that it purports to encumber: "[A] certain tract or parcel of land with the dwelling house, barn and other buildings thereon, situate[d] on the easterly and westerly sides of the highway leading from Pachaug to the highway leading from Norwich to Voluntown, within the Town of Griswold, and being same premises referred to Certificate of Descent as of record will appear from the estate of Albert F. Burton to Bessie H. Burton, et al., and by deed of even date herewith from the Estate of Bessie H. Burton to [the plaintiffs' father], to be recorded in Griswold Land Records concurrently with this mortgage deed."

[5] The latter mortgage deed, which was recorded in the town land records on August 18, 1948, purports to encumber two distinct parcels. The first parcel is described as containing approximately sixty-five acres, while the second parcel is described as containing approximately five acres.

[6] See footnote 1 of this opinion.

[7] Irene Hlastava, whose maiden name was Czeczotka, died testate on February 25, 2001.

[8] The certificate of descent purports to convey the following real property to the plaintiffs and their now deceased siblings: " 'All that certain tract or parcel of land with the buildings thereon, situate[d] on the easterly and

was recorded in the Griswold land records on November 2, 1966.

The plaintiffs commenced this action by service of a writ of summons and a complaint dated March 13, 2007. In their complaint, the plaintiffs requested, among other things, a determination of the parties' rights in the disputed parcel. On January 8, 2008, the defendant filed an answer, four special defenses and a five count counterclaim alleging that the parties to the administrator's deed had committed a mutual mistake by including the disputed parcel within the boundaries of the property that the deed purports to convey. Accordingly, the defendant argued that the administrator's deed did not convey title to the disputed parcel, and, thus, the plaintiffs held no interest therein. The defendant further argued that he held an ownership interest in the disputed parcel by virtue of his predecessor in interest's retention of title. The defendant therefore requested that the court reform the administrator's deed in order to express the true intent of the parties thereto. The plaintiffs filed a reply to the defendant's special defenses and counterclaim on March 25, 2008, denying the defendant's allegations with respect to the administrator's deed. The defendant subsequently amended his counterclaim to allege that he is the sole owner of the disputed parcel.[9]

The case was tried to the court on December 10, 2009. During the trial, both sides offered testimony and introduced exhibits concerning the status of title to the

westerly sides of the highway leading from Pachaug to the highway leading from Norwich to Voluntown, within the Town of Griswold, being the same premises contained in [the administrator's deed] . . . excepting therefrom such portion of said premises as was sold to Eugene L. and Patricia Ann Jackman as appears of record in the Griswold Land Records.' "

[9] In his original counterclaim, the defendant had alleged that the codefendants also held a title interest in the disputed parcel. See footnote 1 of this opinion.

disputed parcel. The plaintiffs called Elton Harvey, who was qualified as an expert title examiner, to testify. Harvey testified that the administrator's deed had conveyed title to the disputed parcel to the plaintiffs' father and that title presently rested with the plaintiffs and the estates of their deceased siblings. Harvey further testified that three of the four mortgage deeds, including the mortgage deed that was executed contemporaneously with the administrator's deed, encumbered the disputed parcel.

The defendant offered testimony at trial regarding the status of title to the disputed parcel. On cross-examination[10] and recross-examination,[11] the defendant testified that he did not claim to hold title to the disputed parcel. Although the defendant did not offer any additional testimony regarding the status of title to the disputed parcel, he did offer evidence regarding the use of the disputed parcel since the date of the administrator's deed. During his case-in-chief, the defendant called Stuart Norman, Sr., to testify. Norman testified that he had worked on the disputed parcel during a logging operation that occurred on the disputed parcel around 1940. Norman also testified that a portable sawmill had been situated on the disputed parcel at that time and that the plaintiffs' father worked on the disputed parcel as part of the logging operation.

On February 16, 2010, the court issued a memorandum of decision denying the defendant's request to

---

[10] The record reveals the following exchange between counsel for the codefendants and the defendant during cross-examination:

"[Counsel for the Codefendants]: Okay. You do not claim ownership by title to the [disputed parcel], do you?

"[The Defendant]: No."

[11] The record reveals the following exchange between counsel for the codefendants and the defendant herein during recross-examination:

"[Counsel for the Codefendants]: Do you claim as you sit here today that you have title to [the disputed parcel]?

"[The Defendant]: I do not."

reform the administrator's deed on the ground of mutual mistake. The court found that the defendant had failed to establish by clear and convincing proof that the parties to the administrator's deed did not intend to convey title to the disputed parcel. Moreover, the court found that the evidence adduced at trial demonstrated that, at most, the plaintiffs' father was unsure as to the precise boundaries of his property. This appeal followed.

On June 7, 2010, the defendant filed a motion for articulation, requesting that the court articulate the factual basis for its decision denying the defendant's request to reform the administrator's deed. In its July 22, 2010 articulation, the court articulated the basis of its findings regarding the administrator's deed and the subsequent use of the disputed parcel. With respect to the administrator's deed, the court explained that it had credited the testimony of the plaintiffs' expert title examiner, Harvey, in finding that the disputed parcel was included within the property that the plaintiffs' father had acquired by way of the administrator's deed. The court also credited the defendant's testimony that he did not claim to hold title to the disputed parcel. With respect to the use of the disputed parcel following the execution of the administrator's deed, the court articulated that a request by the plaintiffs' father to work on the logging operation was not an admission that he did not hold title to the disputed parcel. Rather, the court had determined that his request was nothing more than an effort to earn income from a source that was readily available to him. The court also explained that its finding that the plaintiffs' father was unsure as to the precise boundaries of his property was premised on its finding that the administrator's deed, as well as the two prior deeds, did not contain a metes and bounds property description.

As a preliminary matter, we set forth the standard of review and legal principles that guide our analysis.

The party seeking the reformation of a deed must establish the asserted ground for reformation by clear and convincing proof. *Lopinto* v. *Haines*, 185 Conn. 527, 533–35, 441 A.2d 151 (1981). "Clear and convincing proof is a demanding standard denot[ing] a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . . On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *Blackwell* v. *Mahmood*, 120 Conn. App. 690, 700–701, 992 A.2d 1219 (2010).

"A cause of action for reformation of a deed rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as the result of mutual mistake, or mistake of one party coupled with actual or constructive fraud, or inequitable conduct on the part of the other. . . . Reformation is not granted for the purpose

of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties." (Citation omitted; internal quotation marks omitted.) *Blow* v. *Konetchy*, 107 Conn. App. 777, 792, 946 A.2d 943 (2008). "The remedy of reformation is appropriate in cases of mutual mistake—that is where, in reducing to writing an agreement made or transaction entered into as intended by the parties thereto, through mistake, common to both parties, the written instrument fails to express the real agreement or transaction. . . . In short, the mistake, being common to both parties, effects a result which neither intended." (Citations omitted; internal quotation marks omitted.) *Lopinto* v. *Haines*, supra, 185 Conn. 532.

Upon our review of the record, we conclude that the court's determination that the facts in the present case did not merit reformation of the administrator's deed was not clearly erroneous. Indeed, the record contains ample evidence to support the court's determination that reformation of the administrator's deed was not warranted on the ground of mutual mistake. The record contains the testimony of the plaintiffs' expert title examiner, Harvey, who testified that the disputed parcel is included within the boundaries of the property that the plaintiffs' father had acquired under the terms of the administrator's deed. The record also contains Harvey's testimony regarding the four mortgage deeds that the plaintiffs' father had executed on that property. As previously mentioned herein, Harvey testified that three of the four mortgage deeds, including the mortgage deed that the plaintiffs' father granted to Carrie Roode contemporaneously with their execution of the administrator's deed, encumbered title to the disputed parcel.

Our review of the record also leads us to conclude that the court carefully considered the evidence

adduced by the defendant. We note that the court determined that the plaintiffs' father had requested to partake in a logging operation on the disputed parcel following the execution of the administrator's deed. The court, in its articulation, explained that it had considered the foregoing and determined that, at most, it indicated that the plaintiffs' father was unsure as to the precise boundaries of his property. We cannot conclude that the court's determination is clearly erroneous in light of our standard of review and other relevant evidence in the record. Finally, and perhaps most importantly, we note that the record contains the defendant's testimony that he did not claim to hold title to the disputed parcel as of the trial date. On the basis of the foregoing analysis, we conclude that the court's finding that the administrator's deed was not affected by a mutual mistake was not clearly erroneous and that the court properly denied the defendant's request for reformation of the deed.

The judgment is affirmed.

In this opinion the other judges concurred.