******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CUSTOMERS BANK *v.* JODIE M. BOXER ET AL.
(AC 35465)

Gruendel, Robinson and Alvord, Js.*

*Argued November 18, 2013—officially released March 4, 2014*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Housing Session, Hon. Jack L.
Grogins, judge trial referee.)

*Abram J. Heisler*, for the appellant (defendant Carlton Tucker).

*Andrew P. Barsom*, with whom, on the brief, was
*Alena C. Gfeller*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant Carlton Tucker appeals from the trial court's judgment of immediate possession in favor of the plaintiff, Customers Bank.[1] On appeal, the defendant claims that the court erred in finding that he was not a bona fide tenant as defined by Title VII of the Helping Families Save Their Homes Act of 2009, known as the Protecting Tenants at Foreclosure Act of 2009, Pub. L. No. 111-22, §§ 701–704, 123 Stat. 1660 (PTFA).[2] We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. The plaintiff acquired title to 426 Westover Road, Stamford (property) from Westover Enterprise, LLC (prior owner) on February 23, 2012, via a judgment of strict foreclosure. The defendant was a resident of the property when the plaintiff took possession. The plaintiff initially exercised its right to terminate the tenancy of the defendant by serving him with a notice to quit on April 2, 2012, that required the defendant to quit possession of the property on or before July 3, 2012 (first notice). Following the service of the first notice, the defendant did not contact the plaintiff, tender rent or use and occupancy payments to the plaintiff or the prior owner, and "failed, neglected, and/or refused to provide proof of a valid lease agreement." On or about May 7, 2012, the plaintiff served the defendant with a supplemental notice to quit, revoking the first notice and directing the defendant to quit possession of the property on or before May 15, 2012 (second notice). The defendant did not quit possession of the property at that time.

Thereafter, in late May, 2012, the plaintiff commenced this action against the defendant. In the second count of its operative complaint, the plaintiff alleged that the defendant's right or privilege to occupy the property had terminated.[3] The plaintiff asserted that the defendant was not a " 'bona fide' [tenant] under the ambit of the [PTFA]" due to the defendant's failure to "produce any lease which sets forth an arm's-length transaction to enter such tenancy and requires payment of rent that is not substantially less than the fair market rent of the subject property . . . ." On September 6, 2012, the court ordered the defendant to make use and occupancy payments of $4000 per month. The defendant did not comply with that order and failed to make any of the use and occupancy payments, and, thus, judgment for possession was rendered in the plaintiff's favor on September 27, 2012. The defendant filed a motion to open the judgment, which the court granted on October 16, 2012. The defendant subsequently filed an answer and special defenses,[4] asserting that the plaintiff failed to provide ninety days' notice to the defendant as required by the PTFA.

On November 8, 2012, the defendant stipulated to the

plaintiff's ability to prove its prima facie case under count two of the complaint, and the trial was bifurcated to allow the defendant to present evidence regarding the pleaded special defenses, namely, the applicability of the PTFA.[5] The court heard evidence regarding the defendant's special defense on November 15, 2012. Testimony revealed that there was a six month written lease between the prior owner of the property and the defendant for a term of tenancy beginning on January 19, 2012, and ending on June 31, 2012, that provided for monthly rental payments of $5000. The defendant testified that he did not make any rental payments to the prior owner of the property, and the prior owner testified that he never received any rent from the defendant. Instead, the defendant and the prior owner both testified that they modified the six month written lease via an oral agreement,[6] whereby "in lieu of the $5000, being that the property needed work," the defendant "would do some things there to maintain the property." The defendant stated that he undertook certain expenses in connection with his occupancy of the property, including repairing a fence on the property, painting the interior and exterior of the premises, and filling the oil tank.[7] On the basis of this oral agreement with the prior owner, the defendant argued that he is a bona fide tenant under the PTFA, and that the plaintiff should have provided him with a ninety day notice to quit.

At the conclusion of evidence, the trial court ordered the parties to file simultaneous briefs on January 3, 2013, regarding the applicability of the PTFA. In a written memorandum of decision released on February 28, 2013, the trial court rendered judgment for immediate possession in favor of the plaintiff. In its decision, the court concluded that the defendant "ha[s] failed to maintain [his] burden of proof with respect to the alleged defenses by, most notably, failing to prove the third prong of the test for establishing [his] status as a bona fide [tenant] under the [PTFA]," and therefore the PTFA was inapplicable. This appeal followed.

On appeal, the defendant argues that the court "erred in stating that the defendant did not assert sufficient facts to trigger the ninety day notice required by the [PTFA]." The defendant specifically challenges the court's ruling that the defendant's "expenditures in improving the property could not constitute proof of a bona fide lease pursuant to the [PTFA]" and urges us to interpret the act broadly. We disagree and affirm the judgment of the trial court.

Our review of the defendant's claim of error first requires us to determine what constitutes a bona fide tenant and lease pursuant to the PTFA. Accordingly, we begin with a statutory analysis of the PTFA. "Issues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination

of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . In seeking to determine that meaning, General Statutes § 1–2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Doctor's Associates, Inc.* v. *Windham*, 146 Conn. App. 768, 783–84, 81 A.3d 230 (2013).

"Moreover, [t]his court will not reverse the factual findings of the trial court unless they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Petrucelli* v. *Travelers Property Casualty Ins. Co.*, 146 Conn. App. 631, 636, 79 A.3d 895 (2013).

The PTFA provides in relevant part that "[i]n the case of any foreclosure on a federally-related mortgage loan or on any dwelling or residential real property after the date of enactment of this title, any immediate successor in interest in such property pursuant to the foreclosure shall assume such interest subject to . . . the provision, by such successor in interest of a notice to vacate to *any bona fide tenant* at least [ninety] days before the effective date of such notice . . . ." (Emphasis added.) Pub. L. No. 111-22, § 702 (a). The PTFA establishes a tripartite conjunctive test for establishing a bona fide lease or tenancy: "(1) the mortgagor or the child, spouse, or parent of the mortgagor under the contract is not the tenant; (2) the lease or tenancy was the result of an arms-length transaction; and (3) the lease or tenancy *requires the receipt of rent that is not substantially less than fair market rent for the property* or the unit's rent is reduced or subsidized due to a Federal, State or local subsidy." (Emphasis added.) Pub. L. No. 111-22, § 702 (b). At trial and now on appeal, the parties dispute whether the defendant's tenancy satisfies the third prong of the test and whether "rent" within the PTFA can include funds spent improving the premises in lieu of rental payments.[8] This issue is one of first impression for this court.

The PTFA does not define the term "receipt of rent." Nevertheless, we turn to our General Statutes for guidance as the PTFA does not preempt state law with respect to the requirements of eviction proceedings. See *Federal National Mortgage Assn.* v. *Williams*, United

States District Court, Docket No. CIV. S-11-3067 (KJM) (E.D. Cal. January 4, 2012) ("federal courts have held that the [PTFA] does not create a federal private right of action, but indeed provides directives to state courts"); *Federal National Mortgage Assn.* v. *Hammond*, United States District Court, Docket No. 11-00867 GAF (OPX) (C.D. Cal. June 22, 2011) ("[t]he PTFA is not a recognized area of complete preemption"); *Nativi* v. *Deutsche Bank National Trust Co.*, United States District Court, Docket No. 09-06096 (PVT) (N.D. Cal. May 24, 2010) ("[t]he PTFA was intended to allow tenants who are victims of the foreclosing crisis a protection that can be used in the state courts to combat unlawful evictions").

General Statutes § 47a-1 (h) defines "rent" as "all periodic payments to be made to the landlord under the rental agreement."[9] Black's Law Dictionary defines "payment" as "[t]he money or other valuable thing so delivered in satisfaction of an obligation." Black's Law Dictionary (9th Ed. 2009); see also *Commissioner on Human Rights & Opportunities ex rel. Arnold* v. *Forvil*, 302 Conn. 263, 274, 25 A.3d 632 (2011) (citing to definition of payment in Black's Law Dictionary in order to reach conclusion that "to constitute income, something does not need to be money; rather, it can be something else of value"). Accordingly, we consider a bona fide lease or tenancy for purposes of applying the PTFA in Connecticut to be a lease or tenancy that requires the receipt of periodic monetary payments or periodic payments of something of value, to the landlord in satisfaction of the tenant's obligation, "*that [are] not substantially less than fair market rent for the property* or the unit's rent is reduced or subsidized due to a Federal, State or local subsidy." (Emphasis added.) Pub. L. No. 111-22, § 702 (b). Applying the law to these facts, the defendant must establish that the oral agreement for repairs and improvements in lieu of rent required the receipt of periodic payments of something of value delivered to the prior owner in satisfaction of the defendant's obligation *and* that the value was reasonably commensurate with the fair market rent of the property. Failure to establish either of these elements renders the PTFA inapplicable.

On the basis of the testimony of the defendant and the prior owner, as well as the other evidence before it, the trial court found that "the [defendant] ha[s] not established [that] the value of the repairs or improvements was commensurate with the fair market value"[10] rent of the property. "[I]t is well established that [i]t is within the province of the trial court, when sitting as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence." (Internal quotation marks omitted.) *Rutka* v. *Meriden*, 145 Conn. App. 202, 211–12, 75 A.3d 722 (2013). Our review of the record reveals that there was sufficient evidence to support the trial court's conclu-

sion. Accordingly, the defendant failed to establish that his lease or tenancy required the receipt of rent that was not substantially less than fair market rent for the property, and the court properly concluded that he did not qualify for the protections of the PTFA.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Jodie M. Boxer and Rose Tucker were also named as defendants in the action brought by the plaintiff. On September 27, 2012, a motion for default for failure to appear was granted as to Boxer and the case was withdrawn by the plaintiff as to Rose Tucker. Neither defendant is a party to this appeal. We therefore refer in this opinion to Carlton Tucker as the defendant.

[2] Initially set to expire on December 31, 2012, the PTFA was extended to December 31, 2014, by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111–203, § 1484, 124 Stat. 2204 (2010).

[3] The plaintiff initially brought a three count complaint against the defendant. In its first count, the plaintiff alleged nonpayment, and in its third count, the plaintiff alleged that the defendant's tenancy had expired by lapse of time. The plaintiff subsequently withdrew these counts.

[4] The defendant raised four special defenses in total. When agreeing to stipulate to the provisions of the plaintiff's second count, however, he stated that the "crux of [his] defense" was the PTFA and whether the required ninety days' notice was given.

[5] The defendant has raised his claim under the PTFA in a special defense, and "the general rule is that a defendant who pleads a special defense bears the burden on that issue . . . ." *National Publishing Co.* v. *Hartford Fire Ins. Co.*, 287 Conn. 664, 673, 949 A.2d 1203 (2008). Furthermore, he has stipulated to the plaintiff's ability to prove its prima facie case that "[t]o the extent the [defendant] once had a right or privilege to occupy [the property], [that] right or privilege has since terminated by virtue of the judgment of strict foreclosure and absolute vesting of the title [to the property] in the plaintiff . . . and the plaintiff's service of [the second notice]."

[6] The defendant could not provide the exact date of this oral agreement with the prior owner, other than stating that it "was around the time that we signed the lease." He also testified that he thought that they might have "entered into the agreement prior to the signing of the lease." Similarly, the prior owner testified that he and the defendant entered into their oral agreement "[a]round the same—same week or two" when the written lease was signed.

[7] The defendant testified that he spent $7150 to repair the fence and $11,750 to paint the interior and exterior of the premises. The defendant submitted an "invoice" for the repair of the fence, which listed a "shipped to" date of March 1, 2012, and an "estimate" for the painting of the premises, which was dated August 2, 2012. Both the invoice and the estimate included the notation that they were paid in cash. The defendant also submitted an invoice dated June 1, 2012, for $3709.38 for oil, which consisted of a "[b]alance [b]rought [f]orward" of $3655.55 and "[f]inance [c]harges" totaling $53.83. There was no evidence as to whether the defendant paid this invoice.

[8] We note that although the written lease states that any modifications to the agreement must be in writing signed by the defendant and the prior owner, the record reveals that both the defendant and the prior owner agreed that the written lease was modified by their oral agreement to allow the defendant to spend funds improving the property in lieu of rental payments, and that the defendant was occupying the property pursuant to the oral agreement. "Under the general rules applicable to oral modification of written contracts, in the absence of statutory restrictions a written lease may be subsequently modified as to the amount of rent, by oral agreement." *Baier* v. *Smith*, 120 Conn. 568, 571, 181 A. 618 (1935); see also *Taft Realty Corp.* v. *Yorkhaven Enterprises, Inc.*, 146 Conn. 338, 342, 150 A.2d 597 (1959) ("[t]he rent provided in a written lease may even be changed by a subsequent parol agreement").

[9] General Statutes § 47a-1 (i) defines "rental agreement" in relevant part as "all agreements, written or oral, and valid rules and regulations . . . embodying the terms and conditions concerning the use and occupancy of a dwelling unit or premises."

[10] The trial court considered the fair market rent of the property to be "at

least $4500 on a monthly basis," but did not make an explicit finding of the exact amount.