******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

PATRICIA R. KAPLAN *v.* DAVID SCHEER ET AL.
(AC 39515)

DiPentima, C. J., and Prescott and Eveleigh, Js.

*Syllabus*

The plaintiff property owner sought, inter alia, the reformation of a deed in connection with a settlement agreement with the defendants resolving her adverse possession action against them. In that action, the plaintiff had claimed adverse possession of a portion of the defendants' property that comprised part of her driveway. The settlement agreement provided that the parties agreed to resolve all issues and disputes between them. Pursuant to the agreement, the plaintiff withdrew the action, the parties exchanged quitclaim deeds and the defendants granted the plaintiff an easement for pedestrian and vehicular access to the portion of her driveway that was on their property. The defendants' deed conveyed "any and all" of their rights in the plaintiff's property. The plaintiff's deed conveyed "any and all" of her rights in the defendants' property except her rights in the driveway easement. Among the rights conveyed was an easement permitting the plaintiff to cross the defendants' property to access Long Island Sound. The defendants' attorney recorded the three instruments on the town land records. The settlement agreement contained no specific language dictating the order in which they were to be recorded. Thereafter, the defendants informed the plaintiff that she no longer would be permitted to cross their property to access the water. In response, the plaintiff commenced the present action seeking to reform the deed she exchanged with the defendants by reserving the water access easement. She asserted, inter alia, that because of the parties' mutual mistake, the deeds were recorded in the wrong order, resulting in the inadvertent conveyance of the water access easement. After a trial, the court rendered judgment in favor of the defendants, from which the plaintiff appealed to this court. *Held*:

1. The plaintiff could not prevail on her claim that the trial court misinterpreted the settlement agreement by concluding that the alphanumeric prefixes were included only for convenience and did not bear on the parties' intent: the plain language of the settlement agreement belied the plaintiff's contention that the alphanumeric prefixes determined the sequence in which the subject instruments were to be recorded, as the settlement agreement was silent as to the sequence of recording, and it expressly provided that the parties agreed to resolve all of the issues and disputes between them by the execution and exchange of the subject instruments, and it was clear from the express language in the settlement agreement and the legal instruments, that the only rights the plaintiff sought to preserve were those in the driveway easement, which she did, and, therefore, the express intent of the settlement agreement was satisfied, regardless of whether the sequence of recording or the language of the instruments, or both in combination, had an effect on the conveyance of the water access easement; moreover, the plaintiff's interpretation would have rendered superfluous the "any and all" language in the settlement agreement, and in the absence of explicit language to the contrary, this court declined to presume that a list invariably demands sequential performance, especially where such a presumption would render superfluous other contractual language.

2. The plaintiff's claim that the trial court erred in rejecting her claim of mutual mistake was without merit, as that court's finding that the plaintiff failed to prove mutual mistake by clear and convincing evidence was not clearly erroneous; there was sufficient evidence in the record to support the court's conclusion that reformation of the subject deed on the ground of mutual mistake was not warranted, as the record clearly indicated that the trial court carefully considered and weighed all the evidence and testimony and determined that the defendants were more credible than the plaintiff and that there was insufficient credible evidence to find, by clear and convincing evidence, that there was mutual mistake, and it was not the role of this court to second-guess on appeal the trial court's credibility determinations.

Argued December 5, 2017—officially released June 12, 2018

*Procedural History*

Action for, inter alia, the reformation of a deed, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the defendants filed a counterclaim; thereafter, the court, *Nazzaro, J.*, granted the defendants' motion to cite in Ian Scott as a counterclaim defendant; subsequently, the matter was tried to the court, *Hon. Richard E. Burke*, judge trial referee; judgment for the defendants, from which the plaintiff appealed to this court. *Affirmed.*

*Matthew G. Berger*, for the appellant (plaintiff).

*Richard T. Meehan*, for the appellees (defendants).

*Opinion*

DiPENTIMA, C. J. This case concerns a settlement agreement pursuant to which (1) the defendants, David Scheer and his wife, Tracy Scheer, granted the plaintiff, Patricia R. Kaplan, an easement for pedestrian and vehicular access to a portion of the plaintiff's driveway that lay on the defendants' property (driveway easement), and (2) the parties exchanged quitclaim deeds. The plaintiff now contends that these deeds were recorded in the wrong order and, as a result, her deed inadvertently conveyed to the defendants a different easement, one that previously had allowed her to cross the defendants' property to access Long Island Sound (water easement).[1] The plaintiff contends that this conveyance was not something the parties bargained for when they reached their agreement. She brought the underlying action seeking to restore the water easement through various equitable remedies; she now appeals[2] from the judgment of the trial court, following a trial to that court, in favor of the defendants.[3] On appeal, the plaintiff claims that the trial court (1) misinterpreted the settlement agreement by finding that the alphanumeric prefixes in it were included only for convenience and did not bear upon the parties' intent and (2) improperly rejected her claim of mutual mistake.[4] We affirm the judgment of the trial court.

The record contains the following relevant facts and procedural history. The plaintiff has lived at 6 Spring Rock Road in Branford since 1969 and has owned that property since 1970. In 1999, the defendants purchased 2 Spring Rock Road, the waterfront parcel immediately to the south of the plaintiff's property. From the start, the relationship between the parties was characterized by mutual antipathy and soon devolved into a series of disputes.

One of these disputes concerned the location of a boundary line. After a survey, the defendants discovered that a portion of the plaintiff's driveway crossed over their property. Thereafter, the defendants erected a stockade fence on or near the boundary line. Following further antagonism from both parties about that fence as well as various plantings along the same boundary, the plaintiff brought an action against the defendants claiming, inter alia, adverse possession of the portion of the defendants' property that comprised part of her driveway.

In 2003, the parties resolved that case by entering into a written settlement agreement. Pursuant to the settlement agreement, the plaintiff withdrew the action, the parties exchanged quitclaim deeds and the defendants granted the plaintiff the driveway easement.[5] The settlement agreement, however, contained no specific language dictating the order in which the defendants' attorney was to record these instruments in the Bran-

ford land records.

On April 23, 2003, the defendants' attorney submitted the instruments in the following sequence. First, the driveway easement was recorded at 9:40 a.m. in volume 813 at page 734.[6] Next, the quitclaim deed from the defendants to the plaintiff (defendants' deed) was recorded at 9:42 a.m. in volume 813 at page 736.[7] Finally, the quitclaim deed from the plaintiff to the defendants (plaintiff's deed) was recorded at 9:44 a.m. in volume 813 at page 738.[8]

The plaintiff's deed conveyed all of her extant rights in the defendants' property "excepting only those rights conveyed" in the driveway easement. See footnotes 6, 7 and 8 of this opinion. Among the rights thus conveyed was the privilege to cross the defendants' property to access the water, which the plaintiff argued she possessed by virtue of both the defendants' deed, which made reference to it in the description of the defendants' property, and an 1882 warranty deed.[9] The defendants eventually informed the plaintiff that, because all her rights in their property had been conveyed to them and because the plaintiff and her husband had continued to engage in activities the defendants found injurious to the quiet enjoyment of their property,[10] the defendants would no longer permit the plaintiff and her guests to cross the defendants' property to access the water.

In 2012, the plaintiff brought the underlying action, seeking, inter alia, to reform the plaintiff's deed "by reserving the [water easement]."[11] In support of her claim for reformation, the plaintiff alleged mutual and unilateral mistake, the latter of which by actual and constructive fraud or inequitable conduct. After a five day trial to the court in August and December, 2015, the court rendered judgment in favor of the defendants. See footnote 3 of this opinion. The plaintiff appealed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the trial court erred by concluding that the alphanumeric prefixes in the settlement agreement; see footnote 5 of this opinion; were included only for convenience. She contends that the prefixes indicated the order in which the property instruments were to be recorded. We disagree.

We begin with the applicable legal principles. The plaintiff argues that "[w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law" over which our review is plenary. (Internal quotation marks omitted.) See *Reid* v. *Landsberger*, 123 Conn. App. 260, 271, 1 A.3d 1149, cert. denied, 298 Conn. 933, 10 A.3d 517 (2010). The defendants counter that, because the court made a finding of fact, the clearly erroneous standard applies. These arguments are

incomplete because, as explained herein, the scope and depth of our review depend on whether the contractual language is ambiguous on its face.

"The law governing the construction of contracts is well settled. When a party asserts a claim that challenges the trial court's construction of a contract, we must first ascertain whether the relevant language in the agreement is ambiguous. . . . If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . [If] the language of a contract is ambiguous, the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous. . . . A contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . Accordingly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . .

"[W]e accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract. . . . [If] the language is unambiguous, we must give the contract effect according to its terms. . . . [If] the language is ambiguous, however, we must construe those ambiguities against the drafter. . . . Moreover, in construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous." (Citations omitted; internal quotation marks omitted.) *EH Investment Co., LLC* v. *Chappo, LLC*, 174 Conn. App. 344, 357–58, 166 A.3d 800 (2017); see also *Reid* v. *Landsberger*, supra, 123 Conn. App. 271–72.

We conclude that the section of the settlement agreement at issue; see footnote 5 of this opinion; is unambiguous on its face. The settlement agreement is straightforward in its mandate that the parties draft and exchange the referenced legal instruments. The parties' conflicting understandings of the *application* of the prefixes notwithstanding, there is nothing intrinsically ambiguous about the alphanumeric labeling.[12] See *EH Investment Co., LLC* v. *Chappo, LLC*, supra, 174 Conn. App. 358 ("any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms" [internal quotation marks omitted]). Accordingly, our review is plenary.

The plain language of the settlement agreement, specifically the substantive language of the challenged section, belies the plaintiff's contention that the alphanumeric prefixes determine the sequence of recording. First, the settlement agreement is silent as to the sequence of recording. Second, it expressly indi-

cates that the parties "agree to resolve *all of the issues and disputes between them* . . . ." (Emphasis added.)

The resolution of "all of the issues and disputes between them" is conditioned on the execution and exchange of the instruments, each of which is given an express purpose: "A. The [p]laintiff . . . has executed and delivered a Quit Claim Deed of any and all interest that she may have in or to the [defendants'] property, *with the specific intention of relinquishing any and all claims she may have to said property.* . . . B. The [d]efendants . . . have executed and delivered a Quit Claim Deed of any and all interest that they may have in or to the [plaintiff's] property, *with the specific intention of relinquishing any and all claims they may have to said property.* . . . C. [The defendants] have granted [the plaintiff] a perpetual easement *for the purpose of pedestrian and vehicular access to a portion of the* [d]*efendants' property* . . . ." (Emphasis added.)

Relevant also is the language of the plaintiff's deed to the defendants, which was incorporated by reference into the settlement agreement. See footnotes 6, 7 and 8 of this opinion. The plaintiff quitclaimed "*all* the right, title, interest, claim and demand whatsoever . . . . Excepting *only* those rights conveyed in a Grant of Pedestrian and Vehicular Access Easement recorded herewith." (Emphasis added.) That easement, the driveway easement, is granted "for the purpose of pedestrian and vehicular access *to her property at 6 Spring Rock Road* . . . ." (Emphasis added.) Together, these instruments indicate an express purpose on the part of the plaintiff to disclaim all rights in and interests to the defendants' property except for pedestrian and vehicular access, via the driveway easement, to her own property. Because the plaintiff retained that right, the express intentions of the settlement agreement were satisfied regardless of whether the sequence of recording or the language of the instruments, or both in combination, effected the conveyance of the water easement.[13] Put another way, the settlement agreement does precisely what it says it is meant to do.

Moreover, the plaintiff's interpretation would render superfluous the "any and all" language in the settlement agreement. "[I]n construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous." (Internal quotation marks omitted.) *EH Investment Co., LLC* v. *Chappo, LLC*, supra, 174 Conn. App. 358. To the extent that the plaintiff argues that losing her access to the water and grove was an "unintended consequence" of the contract between them, it is entirely irrelevant to the interpretation of the unambiguous language *in the settlement agreement*. "The circumstances surrounding the making of the contract, the purposes which the parties sought to accomplish and their motive

cannot prove an intent contrary to the plain meaning of the language used. . . . It is axiomatic that a party is entitled to rely upon its written contract as the final integration of its rights and duties." (Internal quotation marks omitted.) *Yellow Book Sales & Distribution Co.* v. *Valle*, 311 Conn. 112, 119, 84 A.3d 1196 (2014). Again, it is clear from the express language in both the settlement agreement and in the legal instruments that the *only* rights the plaintiff sought to preserve were those in the driveway easement.

In the absence of explicit language to the contrary, we decline to presume that a list invariably demands sequential performance. We especially are disinclined to do so where, as here, such a presumption would render superfluous other contractual language. For those reasons, we conclude that the trial court did not misinterpret the settlement agreement by concluding that its alphanumeric prefixes were included only for convenience.

## II

The plaintiff next claims that the trial court erred in rejecting her claim of mutual mistake.[14] This claim is without merit.

## A

We note at the outset that the plaintiff's reformation claim is somewhat nebulous. Although it is true that reformation of a deed is an appropriate remedy where *the deed itself* embodies the parties' contract; see *Lopinto* v. *Haines*, 185 Conn. 527, 531–32, 441 A.2d 151 (1981); the waters are muddied in this case by the separate existence of the written settlement agreement. Although reformation of the plaintiff's deed would bring about the plaintiff's desired result, reformation of the deed does not actually repair the mistake *in the written agreement* alleged by the plaintiff. Put another way, reformation of the plaintiff's deed would be an equitable end run around the settlement agreement itself.

This is significant because the equitable remedy of reformation "is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorialized that agreement is at variance with the intent of both parties . . . ." (Internal quotation marks omitted.) Id., 532. In this case, the writing that memorialized the parties' contract is the settlement agreement, and the mistake alleged here is the failure of the agreement to specify the order of recording. Thus, to reform the deed itself would be to change the substance of the bargained for consideration exchanged pursuant to the settlement agreement, not to restate the actual contract between the parties.[15] "[T]o prevail in [a case for reformation], it must appear that *the writing*, as reformed, will express what was understood and agreed to by both parties." (Emphasis added; inter-

nal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Perez,* 146 Conn. App. 833, 840, 80 A.3d 910 (2013), appeal dismissed, 315 Conn. 542, 109 A.3d 452 (2016) (certification improvidently granted); *Greenwich Contracting Co.* v. *Bonwit Construction Co.,* 156 Conn. 123, 127, 239 A.2d 519 (1968); see also 7 J. Perillo, Corbin on Contracts (Rev. Ed. 2002) § 28.45, pp. 281–82 ("Note the limited scope for reformation. Contracts are not reformed for mistake; writings are. The distinction is crucial." [Footnote omitted.]).

B

That caveat notwithstanding, and even if we were to conclude that reformation of the plaintiff's deed is the appropriate remedy in this case, the trial court did not err in concluding that the plaintiff failed to prove the underlying claim of mutual mistake.

"The party seeking the reformation of a deed must establish the asserted ground for reformation by clear and convincing proof. . . . Clear and convincing proof is a demanding standard denot[ing] a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . . On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . .

"A cause of action for reformation of a deed rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as the result of mutual mistake, or mistake of one party coupled with actual or constructive fraud, or inequitable conduct on the part of the other. . . . Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties. . . . The remedy of reformation is appropriate in cases of mutual mistake—

that is where, in reducing to writing an agreement made or transaction entered into as intended by the parties thereto, through mistake, common to both parties, the written instrument fails to express the real agreement or transaction. . . . In short, the mistake, being common to both parties, effects a result which neither intended." (Citations omitted; internal quotation marks omitted.) *Czeczotka* v. *Roode*, 130 Conn. App. 90, 98–99, 21 A.3d 958 (2011); see also *Lopinto* v. *Haines*, supra, 185 Conn. 533–35; *Blackwell* v. *Mahmood*, 120 Conn. App. 690, 700–701, 992 A.2d 1219 (2010); *Blow* v. *Konetchy*, 107 Conn. App. 777, 792, 946 A.2d 943 (2008).

The court's conclusion that the facts in the present case do not demand reformation of the deed was not clearly erroneous. Essentially, the plaintiff contended at trial that the conveyance of the water easement was an unintended consequence of the settlement agreement, whereas the defendants contended that those rights were wrapped up in the bargained for consideration exchanged pursuant to the settlement agreement. This case, therefore, boiled down to a contest of credibility, and there is sufficient evidence in the record to indicate that reformation was not warranted.

For instance, the defendants repeatedly testified that their reasoning for agreeing to exchange deeds was that they "wanted peace" and "did not want to have any repeat performances of lawsuits that were really going to be based on trying to secure any additional parts of [their] properties or rights on any additional portions of [their] property." They testified that they knew that they owned the stairs and wanted to maintain the right to control access to them. Furthermore, both the plaintiff's prior attorney and the plaintiff herself testified that she had understood the language of the settlement agreement, reviewed it with her attorney, asked no questions about it and raised no objections to it.

Additionally, as discussed previously in this opinion, the sequence of recording had no effect on *the boundary line or the creation of the driveway easement.* Although the parties dispute the effect of the sequence of recording on the *water* easement, the purpose of the settlement agreement was to create the driveway easement and to settle the boundary dispute only, not to preserve the water easement.[16] Thus, we cannot say that the court clearly erred in concluding that there was not clear and convincing evidence of a mistake common to both parties that effected a result neither party intended; they intended to, and did, create the driveway easement.

Indeed, the record clearly indicates that the court carefully considered and weighed all the evidence and all the testimony and determined that the defendants were more credible than the plaintiff. The court noted that it "believes that there was a mutual mistake, but only by a fair preponderance of the evidence. . . .

There was insufficient credible evidence, however, to find, by clear and convincing evidence, that there was mutual mistake. Therefore, the court does not find there to have been a mutual mistake." "[I]t is well established that [i]t is within the province of the trial court, when sitting as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence." (Internal quotation marks omitted.) *Customers Bank* v. *Boxer*, 148 Conn. App. 479, 487, 84 A.3d 1256 (2014).

Although the court acknowledged that the plaintiff would have prevailed under a lower burden of proof, it nonetheless remains the plaintiff's responsibility to sustain the "heavy burden" of clear and convincing proof where "extremely significant questions of fact," such as whether a written instrument contradicts the actual agreement between the parties, are involved. *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 796, 700 A.2d 1108 (1997); *Lopinto* v. *Haines*, supra, 185 Conn. 531–32. "[The clear and convincing standard's] emphasis on the *high probability* and the *substantial greatness of the probability* of the truth of the facts asserted indicates that it is a very demanding standard and should be understood as such . . . . We have stated that the clear and convincing evidence standard 'should operate as a weighty caution upon the minds of all judges, and it forbids relief whenever the evidence is loose, equivocal or contradictory.'" (Emphasis in original.) *Miller* v. *Commissioner of Correction*, supra, 795, quoting *Lopinto* v. *Haines*, supra, 539. To the extent that the plaintiff is challenging the trial court's conclusion as to the parties' relative credibility, we iterate that "our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses." (Internal quotation marks omitted.) *Czeczotka* v. *Roode*, supra, 130 Conn. App. 98. The trial court specifically stated that "[t]here was insufficient *credible* evidence . . . to find, by clear and convincing evidence, that there was mutual mistake." (Emphasis added.)

Insofar as the plaintiff maintains that "[i]t is unclear from the [memorandum of decision] what testimony, if any, the court relied upon in its passing reference to [the defendants'] testimony," we note that it is the responsibility of the appellant to move for an articulation of the trial court's reasoning. See Practice Book §§ 60-5 and 61-10. In the absence of a further articulation, we are left only with the court's assessment of the parties' testimonies in their entirety, the credibility of which is not for us to second-guess.

We, therefore, cannot say that the trial court's finding that the plaintiff had not proven mutual mistake by

clear and convincing evidence was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In particular, the plaintiff used a walkway and staircase on the defendants' property that leads to the beach below.

[2] The plaintiff's husband, Ian Scott, was a counterclaim defendant in the underlying action. He later withdrew a separate appeal and is not a participant in this appeal.

[3] Specifically, the court rendered judgment in favor of the defendants and ordered that "[t]he claimed right by [the plaintiff] and/or [her husband] to pass or repass, or enter upon the area referred to as the 'Shore and Grove,' or 'Grove' or 'Water and Grove,' to the extent that any such area continues to exist upon [the defendants' property] is hereby extinguished and forever barred. A copy of this order shall be recorded upon the Branford land records by the [defendants]."

[4] The plaintiff also claims that the court erred by determining that the equitable doctrine of laches precluded reformation of the plaintiff's deed. In light of our conclusion that the court properly found that (1) the alphanumeric prefixes in the agreement were included only for convenience and (2) the plaintiff had not proved mutual mistake by the clear and convincing evidence required to sustain an action for reformation, we do not address whether there was an unreasonable and prejudicial delay in bringing the underlying action.

[5] Specifically, the settlement agreement provided as follows: "For and in consideration of the mutual promises, covenants, and agreements herein set forth, the Plaintiff . . . and the Defendants . . . agree to resolve all of the issues and disputes between them on the following terms and conditions:

A. The [p]laintiff . . . has executed and delivered a Quit Claim Deed of any and all interest that she may have in or to the [defendants'] property, with the specific intention of relinquishing any and all claims she may have to said property. A copy of said Deed is appended hereto as 'Exhibit A.'

B. The [d]efendants . . . have executed and delivered a Quit Claim Deed of any and all interest that they may have in or to the [plaintiff's] property, with the specific intention of relinquishing any and all claims they may have to said property. A copy of said Deed is appended hereto as 'Exhibit B.'

C. [The defendants] have granted [the plaintiff] a perpetual Easement for the purpose of pedestrian and vehicular access to a portion of the [d]efendants' property . . . . A copy of said grant of Easement is appended hereto as 'Exhibit C.' "

[6] The driveway easement reads, in relevant part, as follows: "[The defendants] do hereby give, grant, bargain, sell and convey unto [the plaintiff], an easement over that certain piece or parcel of land . . . particularly shown . . . on a map . . . which map is on file or to be filed herewith in the Branford Land Records.

"Said easement is granted to [the plaintiff] for the purpose of pedestrian and vehicular access to her property at 6 Spring Rock Road . . . and shall be binding upon [the plaintiff] and [her] successors and assigns. Said easement shall run with the land . . . .

"Except as otherwise expressly limited herein, [the defendants] . . . [reserve] the right to use the easement area for any purposes as permitted by law which does not prevent or in any way interfere with the use by [the plaintiff] of the easement premises for the purposes herein set forth."

The map referenced in the easement shows that the grant of access covers only that portion of the plaintiff's driveway that crosses onto the defendants' property.

[7] The defendants' deed reads, in relevant part, as follows: "[The defendants] . . . do by these presents . . . justly and absolutely remise, release, and forever QUIT-CLAIM unto [the plaintiff] . . . all the right, title, interest, claim and demand whatsoever as we [the defendants] have or ought to have in or to the property known as 6 Spring Rock Road . . . ."

[8] The plaintiff's deed reads, in relevant part, as follows: "[The plaintiff] . . . do[es] by these presents . . . justly and absolutely remise, release, and forever QUIT-CLAIM unto [the defendants] . . . all the right, title, interest, claim and demand whatsoever as we [the plaintiff] have or ought to have in or to [2 Spring Rock Road]. Excepting only those rights conveyed in a Grant of Pedestrian and Vehicular Access Easement recorded herewith."

[9] This warranty deed, granted to James Smith and William Munson by Elizur Clinton, was recorded in the Branford land records in volume 37 at page 472. It grants access across the defendants' property to "the grove

and shore."

[10] The plaintiff admitted to crossing the defendants' stairs after Hurricanes Irene and Sandy despite signs prohibiting access and warning about damage and trimming the defendants' plants without permission. The plaintiff's husband admitted to poisoning a large cedar tree on the defendants' property that blocked his and the plaintiff's view to the water.

The defendants also testified that the plaintiff and her husband engaged in other intimidating behavior. The plaintiff likewise testified that the defendants engaged in obstinate and unreasonable behavior.

[11] All told, the plaintiff sought reformation of her deed or, in the alternative, a prescriptive easement to the defendants' property. In support of her claim for reformation, the plaintiff pleaded both mutual and unilateral mistake, the latter of which supported by alleged actual fraud, constructive fraud or inequitable conduct. She prayed for injunctive relief to reform the deed, an injunction prohibiting the defendants from interfering with her right to use the easements and/or an injunction as to the prescriptive easement.

The defendants brought a counterclaim against the plaintiff and her husband seeking injunctive relief and to quiet title. See footnote 2 of this opinion. In response, the plaintiff's husband asserted a right to traverse the defendants' property by prescription because he had used the walkway and stairs on the defendants' property to access the beach for some thirty-five years.

The court rejected both the plaintiff's and her husband's claims to prescriptive easements, concluded that the plaintiff could not prove either the unilateral or mutual mistake necessary to support her claim for reformation and determined that the plaintiff's claim for reformation was time barred. Although the court rendered judgment in favor of the defendants; see footnote 3 of this opinion; it did not separately address the defendants' counterclaim.

[12] The plaintiff relies in part on federal cases that speak to the interpretation of headings and captions. See, e.g., *International Multifoods Corp.* v. *Commercial Union Ins. Co.*, 309 F.3d 76, 85 (2d Cir. 2002) (heading must be considered and given effect in contractual constructions); *Mazzaferro* v. *RLI Ins. Co.*, 50 F.3d 137, 140 (2d Cir. 1995) ("[c]aptions are relevant to contract interpretation"). These cases are neither apposite nor persuasive; captions and headings convey detailed information that alphanumeric prefixes cannot. That is, we are unable to conclude, without more, that listing the letters of the alphabet from "A" to "Z" is equivalent to listing ordinal numbers from "first" to "twenty-sixth." Our analysis might be considerably different if the settlement agreement contained a *heading* or *caption* that read "Sequence of Recording" or "Order of Performance."

[13] Indeed, the defendants argue that the plaintiff would not prevail even if the deeds were recorded in the opposite order. The plaintiff's deed "*forever* QUIT-CLAIM[s] unto [the defendants] . . . all the right, title, interest, claim and demand whatsoever as we [the plaintiff] have or ought to have . . . . Excepting only those rights conveyed in a Grant of Pedestrian and Vehicular Access Easement . . . ." (Emphasis added.) The defendants' experts, Attorneys John P. Tesei and Robert Piscitelli, opined that such language suggests that the plaintiff's right would not have been resurrected by the defendants' deed even if it had been filed subsequently.

[14] As discussed previously in this opinion, the plaintiff argued at trial that there was also unilateral mistake supported either by actual fraud, constructive fraud or inequitable conduct. On appeal, the plaintiff only challenges the court's ruling as to mutual mistake.

[15] We acknowledge, however, both that the function of the deed is "merely to pass title to land, pursuant to the agreement of the parties"; (internal quotation marks omitted) *Lopinto* v. *Haines*, supra, 185 Conn. 532; and that all the instruments in this case were incorporated by reference into the settlement agreement. Those facts do not change our analysis.

[16] The plaintiff relies on *Mulla* v. *Maguire*, 65 Conn. App. 525, 783 A.2d 93, cert. denied, 258 Conn. 934, 785 A.2d 229 (2001), for the proposition that the granting of a quitclaim deed for the purpose of settling a boundary dispute cannot extinguish a separate right-of-way. The existence of a separate written agreement outlining the parties' intent distinguishes the present case from *Mulla*. In *Mulla*, intent had to be determined, upon cross motions for summary judgment, solely on the basis of the deed itself. Id., 536.