******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION ET AL. *v.* ROBERT
J. VIRGULAK ET AL.
(AC 40479)

Sheldon, Keller and Bear, Js.*

*Syllabus*

The plaintiff bank, J Co., sought to foreclose a mortgage on certain real property owned by the defendant T. T's husband, R, had executed and delivered to J Co. a note for a loan on December 11, 2006. The note was not signed by T. On the same date, T signed a mortgage for property she owned, which did not reference R, and recited that it was given to secure a note dated December 11, 2006, and that the note was signed by T as the borrower. After the note subsequently went into default, this action followed. Thereafter, M Co. was sustituted as the plaintiff. The trial court rendered judgment in part in favor of T on the counts seeking foreclosure and reformation of the mortgage deed to reflect that the obligation being secured by the mortgage was R's debt and not that of T. With respect to the unjust enrichment count, the court found that T had benefited in several respects as a result of R's loan but that certain responses by M Co. to requests for admissions precluded any recovery on its unjust enrichment claim, except for certain property tax payments that T conceded that she owed to M Co. On M Co.'s appeal to this court, *held:*

1. M Co. could not prevail in its claim that the trial court improperly failed to consider the foreclosure count as a stand-alone claim that was independent of the reformation count: that court concluded that M Co.'s claim was inadequately briefed and unsupported by any authority, and that M Co.'s claim that the mortgage could be foreclosed without first reforming the mortgage was without merit, as it was undisputed that T did not sign the note executed by R and the mortgage signed by T did not purport to secure a note executed by R but, rather, identified T as the borrower on the note, and the mortgage did not expressly refer to any obligation for which T was legally responsible; moreover, M Co.'s claim that the mortgage T signed was intended to secure the note executed by R and, thus, that foreclosure was warranted was unavailing, as the court determined that the mortgage, as executed, was a nullity because it secured a nonexistent debt, and although M Co. claimed that the discrepancy in the mortgage was a scrivener's error or inadvertent technical error and that the equitable remedy of foreclosure was warranted even without reformation to ensure justice, the well established jurisprudence on reformation, also an equitable remedy, was the proper prerequisite in order for M Co. to correct the purported mistake in the mortgage document, and because reformation of the mortgage was not warranted under the circumstances of this case, the court's decision denying forelcosure was appropriate.

(*One judge dissenting*)

2. The trial court did not abuse its discretion in declining to reform the mortgage: although M Co. introduced evidence suggesting that the mortgage signed by T was intended to secure R's note, in light of the conflicting evidence before the trial court and the gaps left in the factual record, M Co. did not provide sufficient evidence to demonstrate that a mutual mistake had been made, as T testified that her signatures were on some of the mortgage closing documents but questions remained with respect to what she intended by signing them, T testified that she signed the documents at R's request and had not read them before doing so, and that she was aware of R's intent to borrow money but that R never told her how much money he was borrowing, T signed the documents in the presence of R only and was not present at the closing that took place at an attorney's office, there was no explanation of how the mortgage came to bear the signatures of two witnesses, including an attorney's, nor was there any indication in the record that an attorney or representative from J Co. explained to T her role in the process and that her property would be used as collateral to secure R's loan, and

the vast majority of the documents relating to the closing were given to R and all communications regarding the mortgage were sent to him; moreover, M Co. offered little evidence, if any, to demonstrate that the mortgage was integral to the decision to provide R with the loan, and the records authenticated by a representative of J Co. at trial were silent as to the understanding that J Co. may have had with T regarding her responsibility for R's loan.

3. The trial court properly denied M Co.'s motion to amend its responses to T's requests for admission: M Co. did not cite any case law holding that a court's denial of a motion to withdraw and amend responses to requests for admissions after the conclusion of trial constitutes an abuse of discretion, and the court correctly relied on the applicable rule of practice (§ 13-24 [a]) and noted that T likely would have been prejudiced by allowing M Co. to amend its responses two weeks after trial concluded because T had every reason to believe that M Co.'s admissions were operative and binding, and it was likely that M Co.'s admissions affected how T presented her defense; moreover, if the court had granted M Co.'s motion two weeks after the close of evidence, it likely would have been necessary to give T an opportunity to conduct discovery on the facts established by M Co.'s admissions, which would have caused an unreasonable delay, and M Co. could have filed a timely motion pursuant to § 13-24 (a) to withdraw or amend its admissions before trial but failed to do so.

4. The trial court properly concluded that M Co.'s admissions limited its recovery under its unjust enrichment claim, as it was undisputed that M Co.'s response to request number five of T's requests for admission stated that T did not owe it any money, and, thus, it was appropriate for the court to conclude that M Co. was bound by its admission and to limit M Co.'s recovery to property taxes that T conceded she owed to it.

5. The trial court did not abuse its discretion in denying M Co.'s motion for reargument; although M Co. claimed that its motion for reargument set forth legal principles that were not expressly considered by the court in its memorandum of decision, the record showed that M Co.'s twenty-two page motion was largely a request for the court to reevaluate the facts before it and, thus, sought an improper second bite at the apple.

Argued January 14—officially released September 17, 2019

*Procedural History*

Action to foreclose a mortgage on certain real property of the defendant Theresa Virgulak, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk; thereafter, the plaintiff withdrew the action as to the named defendant; subsequently, the court, *Heller, J.*, granted the motion to substitute Manufacturers and Traders Trust Company as the plaintiff; thereafter, the case was tried to the court, *Hon. David R. Tobin*, judge trial referee; judgment in part in favor of the defendant Theresa Virgulak; subsequently, court, *Hon. David R. Tobin*, judge trial referee, denied the motion for regargument filed by the substitute plaintiff, and the substitute plaintiff appealed to this court. *Affirmed.*

*Brian D. Rich*, with whom, on the brief, were *Laura Pascale Zaino* and *Peter R. Meggers*, for the appellant (substitute plaintiff).

*Alexander H. Schwartz*, for the appellee (defendant Theresa Virgulak).

*Opinion*

KELLER, J. In this foreclosure action, the plaintiff, Manufacturers and Traders Trust Company, also known as M&T Bank (M&T Bank),[1] appeals from the judgment of the trial court in favor of the defendant Theresa Virgulak.[2] The plaintiff claims that the trial court improperly (1) failed to exercise its discretion in considering the plaintiff's foreclosure claim as a stand-alone claim independent from its other causes of action and failed to grant the plaintiff the equitable remedy of foreclosure, (2) declined to reform the mortgage deed, (3) denied its motion to amend its responses to the defendant's requests for admission, (4) concluded that its admissions limited its recovery under its unjust enrichment count, and (5) denied its motion for reargument. We disagree and affirm the judgment of the trial court.

The following procedural history and facts, which either are undisputed in the record or were found by the trial court in its memorandum of decision, are relevant to our resolution of this appeal. On or about December 11, 2006, Robert J. Virgulak (Robert), the defendant's husband, executed and delivered to JPMorgan Chase Bank, National Association (JPMorgan Chase) a note for a loan in the principal amount of $533,000 (note). The defendant was not a signatory on the note. On the same date, the defendant signed a document titled "Open-End Mortgage Deed" (mortgage) for residential property she owns at 14 Bayne Court in Norwalk (property). The mortgage recited that it was given to secure a note dated December 11, 2006, and recited that the note was signed by the defendant as "Borrower" in the amount of $533,000. The term "Borrower" is defined in the mortgage deed as "THERESA VIRGULAK, MARRIED." The mortgage did not reference Robert. The defendant did not sign any guarantee.

On or about February 1, 2010, after JPMorgan Chase failed to receive payments in accordance with the terms of the note, the note went into default and JPMorgan Chase elected to accelerate the balance due. On January 3, 2011, notices of default were sent to both the defendant and Robert and, in February, 2013, JPMorgan Chase commenced this foreclosure action against the couple. The action sought to foreclose the mortgage that JPMorgan Chase claimed to have on the property. In September, 2014, JPMorgan Chase withdrew the foreclosure action against Robert, as he had filed for bankruptcy and been granted an unconditional discharge of the debt.

Thereafter, JPMorgan Chase filed a motion to substitute party plaintiff, stating that it had assigned the subject mortgage deed and note to Hudson City Savings Bank (Hudson). This motion was granted by the court

on August 18, 2015.

On September 25, 2015, the defendant filed a motion for summary judgment arguing that Hudson was precluded from foreclosing the mortgage. In particular, she argued that she had not defaulted under the terms of the note because she was never a party to a promissory note with the plaintiff or any of its predecessors-in-interest. The motion was denied by the court on January 14, 2016, on the basis of the court's determination that an issue of material fact remained with respect to whether the mortgage deed provided reasonable notice to third parties that the defendant was securing Robert's obligation.

On March 18, 2016, the defendant served Hudson with requests for admission. On May 6, 2016, Hudson filed notice with the court that it had responded to the defendant's requests.

On August 9, 2016, the plaintiff, M&T Bank, into which Hudson had merged, filed a motion to substitute itself as the party plaintiff and requested leave to amend the complaint in order to add two additional causes of action. The court granted the motion on August 15, 2016. In the first count of the plaintiff's three count amended complaint, the plaintiff sought a judgment of foreclosure against the defendants. In the second count, it sought equitable reformation of the note in order to include the defendant as a borrower on the note.[3] In the third count, the plaintiff pleaded that the defendant had been unjustly enriched because (1) the proceeds of the note were used to pay off loans which she was obligated to pay and (2) she had free use of the subject property without satisfying the terms of the mortgage, which she had executed.

On December 1, 2016, the defendant filed an amended answer denying the essential allegations of the amended complaint regarding her liability for the debt and the claim of unjust enrichment. She also set forth eight special defenses.

On December 5, 2016, the defendant filed a motion in limine seeking to have the trial court order that all of the plaintiff's earlier admissions in response to her March 18, 2016 requests for admissions "be conclusively established at trial." The trial court indicated subsequently that it would rule on the motion in limine during the course of trial "when a context develop[ed] that require[d] [its] ruling."

The parties tried the case before the court on December 6, 2016. The plaintiff presented three witnesses, including Wilkin Rodriguez, a mortgage banking research officer at JPMorgan Chase, the defendant, and Robert. After the plaintiff rested, the defendant did not present additional evidence; she relied instead on the testimony and exhibits introduced during cross-examination of the witnesses called by the plaintiff. The next

day, the court met with the parties to discuss the issues it believed to be germane to its decision and set a briefing schedule. As noted in the court's memorandum of decision, the court requested that the parties address the following issues in their briefs: (1) "Is the plaintiff entitled to foreclose the mortgage against [the defendant's] property without first reforming the mortgage note to make her a maker or guarantor of the note and/or reforming the mortgage deed to alter the description of the debt secured by the mortgage?"; (2) "If the answer to #1 is negative, is there sufficient evidence to support equitable reformation of the mortgage note and/or deed?"; (3) "If the answer[s] to both #1 and #2 are negative, is the plaintiff entitled to recover, by way of a claim of unjust enrichment, any of the following: [use and occupancy of the property, property taxes paid by the plaintiff for the property, or property insurance premiums paid by the plaintiff for coverage of the property?]"; (4) "If the plaintiff is otherwise entitled to recover under #1, #2, or #3, is such recovery precluded by [the] plaintiff's responses to the requests for admissions . . . which included the admission that the defendant did not owe any money to the plaintiff?"; (5) "If [the] plaintiff is otherwise entitled to recover under #1, #2, or #3, is there adequate evidence to support any of the defendant's special defenses?"

On December 21, 2016, approximately two weeks after the conclusion of the trial, the plaintiff filed a motion seeking to withdraw and amend its responses to the requests for admissions that it had previously provided to the defendant. On December 27, 2016, the court entered orders stating that it would not entertain arguments on the plaintiff's motion until all of the post-trial briefs it had ordered had been filed by the parties.

On April 12, 2017, the court issued its memorandum of decision. The court found in favor of the defendant on the foreclosure and reformation counts of the complaint. In particular, the court stated, among other things, that "[t]he court finds that the plaintiff has not sustained its burden of proving, by clear and convincing evidence, that it [was] entitled to the equitable remedy of reformation of the mortgage deed . . . . Accordingly, the court finds the issues on the second count for [the defendant] and against the plaintiff. Since the plaintiff failed to present any authority to the court which would allow the plaintiff to prevail on the first count [foreclosure claim] in the absence of reformation of the mortgage deed, the court [also] finds the issues on the first count for [the defendant] and against the plaintiff."

The court then proceeded to address the plaintiff's unjust enrichment claim, noting that the defendant had been benefitted in several respects as a result of the loan that Robert had obtained, but determining that, prior to ruling on the unjust enrichment claim, it needed

to determine whether the plaintiff was entitled to withdraw and amend its responses to the defendant's requests for admissions. The court ultimately found that, pursuant to Practice Book § 13-24 (a), a motion to withdraw and amend responses to requests for admissions could not be filed following trial, as was done here, because § 13-24 (a) required the court to find (1) that "the presentation of the merits of the action will be subserved thereby" and (2) the party who obtained the admission will not be prejudiced "in maintaining his or her action or defense on the merits." The court concluded that it was unable to find "that 'the presentation of the merits of the action will be subserved' by the granting of the plaintiff's motion" after trial. It further found that it would be "hard to imagine how the defendant would not be prejudiced at the time the case was tried because defense counsel had every reason to believe that the plaintiff's admissions were both operative and binding." The court, therefore, denied the plaintiff's motion to withdraw and amend, which it had filed on December 21, 2016.[4] The court ultimately determined that the plaintiff's responses to the requests for admissions precluded any recovery on its unjust enrichment claim, except for the property tax payments that the defendant conceded that she owed to the plaintiff.

On May 1, 2017, the plaintiff filed a motion for reargument. The court summarily denied the motion for reargument on May 4, 2017. This appeal followed.[5] Additional facts will be set forth as necessary.

I

The plaintiff first argues that the court committed reversible error by refusing to exercise its discretion in considering the plaintiff's foreclosure claim as a stand-alone claim independent from its other causes of action. The plaintiff also argues that "[a]side from the trial court's failure to properly consider the plaintiff's argument that foreclosure is warranted, even without reformation, extant legal authority . . . dictates that result." We disagree.

A

Our Supreme Court has made clear that when a "trial court is properly called upon to exercise its discretion, its failure to do so is error." *State* v. *Martin*, 201 Conn. 74, 88, 513 A.2d 116 (1986); see also *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 609, 181 A.3d 550, 565 (2018) (remand for hearing was appropriate because trial court failed to exercise its discretion); *Costello* v. *Goldstein & Peck*, P.C., 321 Conn. 244, 256, 137 A.3d 748 (2016) ("the court's failure to recognize its authority to act constituted an abuse of discretion"). In a foreclosure proceeding, "the determination of what equity requires is a matter for the discretion of the trial court. . . . In determining whether the trial court has

abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *AJJ Enterprises, LLP* v. *Jean-Charles*, 160 Conn. App. 375, 394–95, 125 A.3d 618 (2015). We thus address the plaintiff's claim that the court committed reversible error by refusing to exercise its discretion in considering its foreclosure claim as a stand-alone claim.

In support of its argument, the plaintiff directs us to the trial court's memorandum of decision, which states in relevant part: "In its January 27, 2017 posttrial brief . . . the plaintiff does not argue that the law would permit the plaintiff to foreclose a mortgage on 14 Bayne Court without first obtaining equitable reformation of the mortgage note and/or deed. Accordingly, the court will first address the plaintiff's second count which requests reformation." The plaintiff argues that the court's statement is "simply wrong," and that the plaintiff properly requested that the court consider the foreclosure count as an independent claim irrespective of the other two causes of action it advanced.

The plaintiff further contends that it gave the court multiple opportunities to correct this purported error by way of motions for reargument, articulation, and rectification, but it failed to do so. Specifically, it contends that the court improperly ignored its claim for foreclosure. Our review of the record, however, suggests otherwise. After the court issued its memorandum of decision, the plaintiff filed numerous motions with the court to which the court responded. In particular, the plaintiff filed with the court a motion for articulation and a motion for rectification raising this same argument that it presses on appeal. With respect to the motion for articulation, the court addressed the plaintiff's arguments in a four page response. In relevant part, the court stated: "In its first posttrial brief dated January 27, 2017 . . . the plaintiff addressed the merits of the first two counts of its August 9, 2016, amended complaint . . . under one heading [titled] 'Plaintiff has Met its Burden to Recover under its Claim of Foreclosure and Reformation.' In that section of its brief, the plaintiff provided no authority whatsoever supporting the plaintiff's right to foreclose its mortgage without reforming either the mortgage deed (to state that it was Robert's debt under a promissory note that was secured by the mortgage) or the mortgage note (to state that [the defendant] was a maker or guarantor of the note.) The court recognizes that the plaintiff recited some general propositions of law in that brief and in its posttrial reply brief . . . to the effect that mortgage foreclosures are equitable proceedings. . . .

"On page 5 of its May 1, 2017 motion for reargument/ reconsideration . . . the plaintiff cited no less than nine cases in support of its claim that the court had the power, in equity, 'to fashion any order aimed at achieving the interest of justice.' None of those cases addressed the question of whether a mortgage deed which purportedly secured a nonexistent debt could be foreclosed without reforming at least one of the mortgage documents. . . .

"If, in its memorandum of decision, the court failed to address the first count independently of the remedy of reformation claimed in the second count, it was because the plaintiff did not (and probably could not) present the court with any authority supporting the first count as an independent cause of action."

The court further addressed the claim in the court's five page response to the plaintiff's motion for rectification. In a section titled "Plaintiff's 'Stand-Alone' Foreclosure Claim," the court stated: "Following extensive oral argument and review of the plaintiff's brief, the court concluded that the plaintiff had offered no authority for the proposition that the plaintiff was entitled to foreclose its mortgage, which, on its face, purported to secure an obligation that did not exist, without first reforming either the mortgage note or the mortgage deed. The plaintiff correctly points out that foreclosure actions invoke the court's equitable powers. In its memorandum of decision at pages 11 through 18, the court addressed the plaintiff's equitable claim that the mortgage deed should be reformed to reflect that the obligation being secured by the mortgage was not [the defendant's] debt, but rather her husband Robert's debt. The court concluded that the plaintiff did not meet the standards required by case law for the reformation of the mortgage deed.

"The plaintiff offered no legal authority to support the notion that a court, in the exercise of its equitable powers, can change the obligations of a party to a written instrument without meeting the standards for reformation of the instrument. If the court ignored the plaintiff's 'stand-alone' claim it was because it was inadequately briefed and, in the absence of reformation, *without merit*." (Emphasis added.).

With this as our backdrop, we reject the plaintiff's claim that the court "ignore[d] the plaintiff's claim for foreclosure" and conclude that the court did in fact exercise its discretion. With respect to that claim, the court explained that it believed that the plaintiff's claim was inadequately briefed and was unsupported by any citation of authority to support its contention. It made clear that the plaintiff's claim that the mortgage could be foreclosed without first reforming the mortgage was "without merit." As such, we reject the plaintiff's claim and conclude that the court did not ignore the plaintiff's

claim for foreclosure, as it clearly exercised its discretion in declining to grant foreclosure of the defendant's property.

## B

The plaintiff also argues that "[a]side from the trial court's failure to properly consider the plaintiff's argument that foreclosure is warranted, even without reformation, extant legal authority . . . dictates that result." The plaintiff contends that the record in the present case required the court to grant foreclosure because the evidence demonstrates that the mortgage signed by the defendant was intended to secure the note that was executed solely by Robert.

The defendant contends that the plaintiff did not provide either the trial court or this court with any authority to support a claim that a court can foreclose a mortgage that secures a nonexistent debt. Furthermore, the defendant argues that there is no authority in Connecticut to support the proposition that a court can, sua sponte, or at the request of one party to a commercial transaction, rewrite a promissory note or mortgage to materially change the terms of the transaction they describe without first reforming the document. The defendant contends that the proper vehicle by which the plaintiff could obtain relief is by seeking reformation of the mortgage, which the plaintiff did in count two of its complaint. The defendant ultimately argues that the trial court correctly exercised its discretion in refusing to foreclose a mortgage that secured a nonexistent debt. We agree with the defendant.

It is well established that a mortgagee in a foreclosure action is entitled "to pursue its remedy at law on the notes, or to pursue its remedy in equity upon the mortgage, or to pursue both. A note and a mortgage given to secure it are separate instruments, executed for different purposes and, in this State, action for foreclosure of the mortgage and upon the note are regarded and treated, in practice, as separate and distinct causes of action, although both may be pursued in a foreclosure suit." (Internal quotation marks omitted.) *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 266–67, 708 A.2d 1378 (1998). "In order to establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied." (Internal quotation marks omitted.) *Bank of America, N.A.* v. *Gonzalez*, 187 Conn. App. 511, 514, 202 A.3d 1092 (2019).

"Mortgage foreclosure appeals are reviewed under an abuse of discretion standard." (Internal quotation marks omitted.) *Cliffside Condominium Assn., Inc.* v. *Cushman*, 100 Conn. App. 803, 804, 921 A.2d 609 (2007).

"A foreclosure action is an equitable proceeding. . . . The determination of what equity requires is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *Franklin Credit Management Corp.* v. *Nicholas*, 73 Conn. App. 830, 838, 812 A.2d 51 (2002), cert. denied, 262 Conn. 937, 815 A.2d 136 (2003).

In the present case, it is undisputed that the defendant did not sign the promissory note executed by Robert on which he defaulted, prompting this foreclosure proceeding. It is also undisputed that the subject mortgage signed by the defendant does not purport to secure a note executed by her husband, but rather identifies her as the borrower on the note. The subject mortgage does not expressly refer to any obligation for which the defendant is legally responsible. In reviewing the court's memorandum of decision and subsequent rulings on the plaintiff's motions, it is clear that it declined to grant foreclosure of the mortgage without reformation because it determined that the mortgage, as executed, was a nullity because it secured a nonexistent debt.[6]

In arguing that the court should have foreclosed the mortgage despite this discrepancy and without reformation because foreclosure is an equitable remedy in and of itself, the plaintiff cites to numerous cases largely for the axiom that "[f]oreclosure is peculiarly an equitable action, and the court may entertain such questions as are necessary to be determined in order that complete justice may be done." See, e.g., *Hartford Federal Savings & Loan Assn.* v. *Lenczyk*, 153 Conn. 457, 463, 217 A.2d 694 (1966); *Federal Deposit Ins. Corp.* v. *Hillcrest Associates*, 233 Conn. 153, 170–71, 659 A.2d 138 (1995). The factual underpinnings of the cases relied upon by the plaintiff, however, are markedly different from the facts of the present case and, thus, we do not interpret them to suggest that a court can foreclose a mortgage that contains a material mistake without first concluding that the requirements for reformation of the mortgage have been satisfied. Although the plaintiff argues that the discrepancy at issue in the mortgage can best be described as a "scrivener's error" or "an inadvertent technical error" and that the equitable remedy of foreclosure is warranted even without reformation in order to ensure complete justice, our well established jurisprudence on reformation, also an equitable remedy, was the proper prerequisite in order for the plaintiff to correct the purported mistake in the mortgage document.

The dissent ultimately agrees with the plaintiff and concludes that the trial court erred in declining to grant foreclosure of the mortgage. In the dissent's view, the trial court was required to foreclose the subject mortgage, without first reforming it, despite the fact that the mortgage did not purport to secure her husband's debt. The dissent cites to no case law in this state, or elsewhere, that holds that a court can foreclose a mortgage containing this type of material flaw without first satisfying the requirements to reform the document. Like the plaintiff, the dissent cites generally to case law for the proposition that "[f]oreclosure is peculiarly an equitable action . . . ." See, e.g., *Federal Deposit Ins. Corp.* v. *Hillcrest Associates*, supra, 233 Conn. 170–71. On the basis of the equitable nature of foreclosure, the dissent concludes that "[w]hen the essence of a transaction is clear, as it is in this case, a court must look to its substance, instead of relying upon errors of form, to determine its enforceability against a party to it." We respectfully disagree with the dissent that such a conclusion is tenable in light of our Supreme Court's well established jurisprudence on reformation.

The dissent's conclusion essentially would permit a court to disregard the requirements for reformation and choose to foreclose a mortgage that contains a material flaw in the mortgage document if it believed the essence of the transaction was clear. Although the dissent argues that the transaction in this case was clear, there is little support in the record before us to suggest that a contract was ever formed between JPMorgan Chase and the defendant in the first place. Courts do not have the power to make a contract where none exists. Where a contract does exist but does not conform to the real contract agreed upon and does not express the intention of the parties, our Supreme Court has said that our courts can reform the contract if it was executed as the result of mutual mistake, fraud, or other inequitable conduct on the part of the other. See *Lopinto* v. *Haines*, 185 Conn. 527, 531, 441 A.2d 151 (1981) ("reformation of a contract rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as the result of mutual mistake, or mistake of one party coupled with actual or constructive fraud, or inequitable conduct on the part of the other" [internal quotation marks omitted]). Because the dissent's newly proposed "essence of a transaction" test would fly in the face of our Supreme Court's jurisprudence on reformation and would render it obsolete, we decline to sanction such a test.

Following reformation of the mortgage, if appropriate, it would have then been proper for the plaintiff in the present case to seek foreclosure. As we discuss in part II of this opinion, the plaintiff did in fact bring

a cause of action for reformation in count two of its complaint, which the court properly denied. Because reformation of the mortgage was not warranted in the present case, we conclude that the court's decision denying foreclosure was appropriate. The subject mortgage, as executed, was a nullity because it purported to secure a nonexistent debt.[7] The plaintiff has cited no authority, and we have found none, that stands for the proposition that, absent reformation, a court can foreclose a mortgage that purports to secure a nonexistent debt. This is for good reason. To hold otherwise would be counter to the basic concept of mortgages. "A mortgage is a conveyance or retention of an interest in real property as security for performance of an obligation." Restatement (Third), Property, Mortgages § 1.1, p. 8–9 (1997). However, "[u]nless it secures an obligation, a mortgage is a nullity." Restatement (Third), supra, § 1.1, comment.

II

The plaintiff next claims that the court abused its discretion by declining to reform the mortgage. In its view, the evidence at trial and the facts found by the court established that the mortgage signed by the defendant was intended to secure the note executed by Robert and, thus, the mortgage should be reformed to reflect that intention. The defendant argues, however, that the court properly declined to reform the mortgage because the plaintiff did not meet its burden of proving by "clear, substantial and convincing evidence" that there was a mutual mistake made by the parties to warrant reformation. (Internal quotation marks omitted.) We agree with the defendant.

We begin by setting forth our standard of review and the applicable legal principles with respect to this claim. "Reformation and foreclosure are both equitable proceedings." *Derby Savings Bank* v. *Oliwa*, 49 Conn. App. 602, 604, 714 A.2d 1278 (1998). The "determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Perez*, 146 Conn. App. 833, 838, 80 A.3d 910 (2013), appeal dismissed, 315 Conn. 542, 109 A.3d 452 (2015). "When a decision in an equitable matter lies within the trial court's discretion, an appellate court will reverse that decision only when an abuse of discretion is manifest or where an injustice appears to have been done . . . ." (Internal quotation marks omitted.) *Traggis* v. *Shawmut Bank Connecti-*

*cut*, *N.A.*, 72 Conn. App. 251, 264, 805 A.2d 105, cert. denied, 262 Conn. 903, 810 A.2d 270 (2002).

"A cause of action for reformation of a contract rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as the result of mutual mistake, or mistake of one party coupled with actual or constructive fraud, or inequitable conduct on the part of the other." (Internal quotation marks omitted.) *Lopinto* v. *Haines*, supra, 185 Conn. 531. "Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties." (Internal quotation marks omitted.) *Kaplan v. Scheer*, 182 Conn. App. 488, 502, 190 A.3d 31, cert. denied, 330 Conn. 913, 193 A.3d 49 (2018). "Reformation is appropriate in cases of mutual mistake—that is where, in reducing to writing an agreement made or transaction entered into as intended by the parties thereto, through mistake, common to both parties, the written instrument fails to express the real agreement or transaction." *Home Owners' Loan Corp.* v. *Stevens*, 120 Conn. 6, 9–10, 179 A. 330 (1935). Simply put, "the mistake, being common to both parties, effects a result which neither intended." (Internal quotation marks omitted.) *Czeczotka* v. *Roode*, 130 Conn. App. 90, 99, 21 A.3d 958 (2011). "Therefore a definite agreement on which the minds of the parties have met must have pre-existed the instrument in question. The court cannot supply an agreement which was never made, for it is its province to enforce contracts, not to make or alter them." *Hoffman* v. *Fidelity & Casualty Co.*, 125 Conn. 440, 443, 6 A.2d 357 (1939).

"A court in the exercise of its power to reform a contract must act with the utmost caution . . . . In the absence of fraud, it must be established that both parties agreed to something different from what is expressed in writing, and the proof on this point should be clear so as to leave no room for doubt. . . . If the right to reformation is grounded solely on mistake, it is required that the mistake be mutual, and to prevail in such a case, it must appear that the writing, as reformed, will express what was understood and agreed to by both parties." (Citations omitted.) *Greenwich Contracting Co.* v. *Bonwit Construction Co.*, 156 Conn. 123, 126–27, 239 A.2d 519 (1968). The party insisting on reformation must show proof justifying reformation by "clear, substantial and convincing evidence," meaning evidence that "induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) *Lopinto* v. *Haines*, supra, 185 Conn. 534, 534 n.9.

The following additional facts are pertinent to our discussion. During trial, the plaintiff called Rodriguez, a mortgage banking research officer employed by JPMorgan Chase, to testify regarding the files and records maintained by his employer. He testified that his employer maintains files for each mortgage it holds or services, including the original collateral file that typically contains, among other things, the original mortgage note and deed, title insurance policies, and records regarding loan origination. Through his testimony, the plaintiff introduced into evidence numerous documents relating to the subject mortgage, including the note and deed.

With respect to the note, page one of the note recites the obligations of the "Borrower," but the note does not further define that term. Page three of the note, however, bears the signature of "Robert J. Virgulak—Borrower." The note does not contain any reference to the defendant nor does her signature appear on the document. The only person obligated under the terms of the note is Robert.

With respect to the subject mortgage, it recited that it was given to secure a note dated December 11, 2006, signed by the defendant as "Borrower" in the amount of $533,000. The term "Borrower" is defined in the mortgage deed as "THERESA VIRGULAK, MARRIED." There was no reference to Robert.

Rodriguez authenticated numerous documents relating to the approval and closing of the mortgage documents that were addressed to or signed solely by Robert. He also authenticated numerous documents relating to the mortgage that show that the defendant signed a United States Department of Housing and Urban Development settlement statement (commonly referred to as a HUD-1), a Transfer of Servicing Disclosure Statement, a Federal Truth in Lending Statement, and a Notice of Right to Cancel.

The defendant was also called as a witness at trial. During her testimony, she testified that she did not recognize the subject mortgage document but acknowledged that her signature was on it and that it was signed at her husband's request. She knew at the time she signed the mortgage there was an existing mortgage on the residence, but she did not recall the mortgage lender or the balance of the mortgage loan. The defendant testified that she believed that the old mortgage was paid off with the proceeds of the loan Robert received from JPMorgan Chase. She also acknowledged her signature on the HUD-1, Transfer of Servicing Disclosure Statement, Federal Truth in Lending Statement, and Notice of Right to Cancel documents. She testified that she had not read those documents before signing them. The defendant testified that even though she signed the HUD-1 form as "Borrower," she did not receive any

portion of the $155,236.22 shown as paid to "Borrower" at closing. She testified that perhaps Robert had been paid that sum. On being confronted by her deposition testimony, the defendant acknowledged that the proceeds of the 2006 note had been used to pay off a prior mortgage on the property to People's Bank for which she may have been responsible.

On cross-examination by her attorney, the defendant stated that she did not consider the prior mortgages to be her debts since they were taken out by Robert, who managed all the family's bills and paid all the property taxes. She stated that she did not sign any of the documents relating to the mortgage in front of any witnesses and that she believed that she signed the documents at their home in her husband's presence only. The defendant testified that she never filed joint tax returns with Robert and they never had credit cards in both their names. She denied that she had signed any guarantees of her husband's debts.

Robert also testified at the trial. He testified that on the loan application submitted to JPMorgan Chase, he included the value of the property even though he knew that title to that property was solely in the defendant's name. He testified that he believed that he and the defendant were jointly responsible for the prior mortgages on the property. Robert testified that he had received all of the funds available to the borrower at the closing of the mortgage and that the defendant did not receive any portion of the $155,236.32 shown on the HUD-1 form paid to "Borrower" at closing. Some of the proceeds of the mortgage were used by Robert to improve the kitchen and bathroom of the property, and he testified that he made the required payments on the mortgage, the real estate taxes and the property insurance for the property until he filed for bankruptcy in 2010. He never made any additional payments on the mortgage or real estate taxes, but believed he may have reinstated the property insurance after a couple of years.

On cross-examination, Robert testified that the vast majority of the documents relating to the closing of the mortgage were given to him and not to the defendant and all communications regarding the mortgage were sent to him. He testified that the defendant was not present at the closing. Robert testified that a portion of the proceeds of the mortgage were used to pay off credit cards that were Robert's exclusive responsibility, which totaled $109,070.48. Robert testified that he used approximately $35,000 of the $155,236.22 paid to him at closing to improve the kitchen and bathroom of the property. On redirect examination, Robert testified that JPMorgan Chase required that the prior mortgages be paid off as a condition of granting the loan. Those mortgage balances totaled $255,882.56. After the plaintiff rested, the defendant did not present additional evi-

dence; she relied on the testimony and exhibits introduced during cross-examination of the witnesses called by the plaintiff.

In its posttrial brief, the plaintiff argued that to the extent that the court found a technical deficiency with the language of the loan documents, "the court should use its equitable powers, in ensuring justice, to cure the mutual mistake of the parties in not specifically documenting within the mortgage that the note which it secures was executed by Robert and not [the defendant]." It requested that the court "reform the mortgage to reference the fact that the mortgage executed by [the defendant] was to secure the note executed by Robert." On April 12, 2017, the court concluded in its memorandum of decision "that the plaintiff [had] not sustained its burden of proving, by clear and convincing evidence, that it [was] entitled to the equitable remedy of reformation of the mortgage deed . . . ."

On appeal, the plaintiff argues that the only discrepancy, or true error, with the information reflected in the mortgage is the fact that it references that the note it was securing was executed by the defendant rather than her husband. The plaintiff argues that the evidence presented at trial and the facts found by the court established that the mortgage signed by the defendant was intended to secure the note executed by Robert and, thus, the mortgage should be reformed to reflect that intention. In support of this contention, it argues, inter alia, that it demonstrated that reformation was warranted because (1) the trial court found that the defendant's debts were paid off at the time of the closing, (2) it was established that the defendant signed at least four of the closing documents, and (3) it was established that the mortgage itself referred to a note identical to both the date and exact amount of the only note executed in the present case.

The plaintiff argues that in the present case, as in this court's decision in *Derby Savings Bank* v. *Oliwa*, supra, 49 Conn. App. 602, reformation is necessary to ensure justice. In *Derby Savings Bank*, the defendant appealed from the trial court's judgment reforming his mortgage deed and granting strict foreclosure. Id. In that case, the defendant executed a mortgage deed and note to the plaintiff. Id., 602–603. The trial court found that both parties intended for the mortgage to cover property other than that described in the mortgage deed, and that the error resulted from a mistake by the attorney who prepared the mortgage documents. Id., 603. The court found it to be a mutual mistake. Id. Specifically, the trial court found that the commitment letter, which was signed by both parties, described what was found to be the parcel of land actually covered by the mortgage. Id. The mortgage note also contained a notation in its lower left corner describing the correct property. Id. This court affirmed the trial court's deci-

sion. Id., 604.

Unlike in the present case, the plaintiff in *Derby Savings Bank* provided sufficient evidence to demonstrate that a mutual mistake was in fact made. Both the commitment letter and the mortgage note, which were each signed by the defendant, described the correct property which the parties actually agreed was to secure the note. Id., 603. The attorney preparing the mortgage document for the parties, however, failed to include the proper description on the mortgage deed. Id. Under the specific facts of that case, it is evident that the evidence introduced was clear and convincing.

As our Supreme Court has noted, "evidence of a very high order" is required in order to show that reformation is justified. (Internal quotation marks omitted.) *Lopinto* v. *Haines*, supra, 185 Conn. 534. Although the plaintiff in the present case may have introduced some evidence at trial that suggested that the mortgage signed by the defendant was intended to secure her husband's note, in light of the conflicting evidence before the trial court, we are not persuaded that it abused its discretion in declining to reform the mortgage.

In the present case, it was necessary for the plaintiff to demonstrate that JPMorgan Chase and the defendant agreed that the subject mortgage signed by the defendant was effectuated in order to secure her husband's debt, that the subject mortgage did not express that intent, and that the subject mortgage was executed as the result of a mutual mistake. See *Lopinto* v. *Haines*, supra, 185 Conn. 531; see also *Hoffman* v. *Fidelity & Casualty Co.*, 125 Conn. 440, 443, 6 A.2d 357 (1939) ("a definite agreement on which the minds of the parties have met must have preexisted the instrument in question. The court cannot supply an agreement which was never made, for it is its province to enforce contracts, not to make or alter them.").

As the court correctly noted, even with the various documents admitted into evidence at trial and the testimony of the witnesses, many gaps were left in the factual record. For instance, although the defendant testified that her signatures were on some of the mortgage closing documents, there were still questions remaining with respect to her state of mind and what she intended by signing them. The defendant testified that she signed the documents at Robert's request and that she had not read those documents before doing so. The defendant testified that she was aware of Robert's intent to borrow money, but she indicated that he never told her how much money he was borrowing. When asked at trial whether she knew what institution Robert was seeking the loan from, she responded: "No, because . . . I wasn't getting the loan, he was, so I didn't question it."

Furthermore, the record discloses that the defendant signed the aforementioned documents in the presence

of her husband only, and was not present at the closing that took place in Attorney John A. Milici's office. Additionally, as the court noted, there was no explanation of how the mortgage came to bear the signatures of two witnesses, including Attorney Milici's. There is also no indication in the record that any attorney for or a representative from JPMorgan Chase explained to the defendant her role in the process and that her property would be used as collateral to secure Robert's loan. The testimony introduced disclosed that the vast majority of the documents relating to the closing of the mortgage were given to Robert and that all communications regarding the mortgage were sent to him.

Further, the plaintiff offered little evidence, if any, to demonstrate that the subject mortgage was integral to its decision in providing Robert with the loan. As the trial court aptly noted, the records authenticated by Rodriguez at trial were silent as to the understanding that JPMorgan Chase may have had with the defendant regarding her responsibility for Robert's loan. For example, there was no mortgage commitment letter or closing instructions introduced into evidence, which typically would describe the transaction in detail and set forth conditions that must be met in order for disbursement to be made. Additionally, the plaintiff could have called the loan officer or another representative to explain how the subject mortgage impacted its decision to offer the loan. Instead, the only JPMorgan Chase representative introduced at trial was Rodriguez, an employee whose employment began after the execution of the note.

On the basis of the evidence before the trial court, we discern no reason to disturb its decision. We conclude that court did not abuse its discretion in declining to reform the mortgage.

III

The plaintiff next argues that the court improperly denied its motion to amend its responses to the defendant's requests for admission to conform to the evidence at trial. We disagree.

We briefly set forth additional facts necessary for this claim. On December 21, 2016, approximately two weeks after the trial ended and the court had set a briefing schedule, the plaintiff filed a motion to withdraw and amend its responses to the defendant's requests for admission in order to conform to the evidence at trial. In particular, it requested that its responses to requests four and five be withdrawn and amended because there was no basis in fact adduced at trial to support those responses. Request for admission number four asked: "Do you admit that the defendant did not borrow any money from the plaintiff?" The response: "Admitted but this did not preclude the defendant from obtaining a benefit from the loan." Request

for admission number five asked: "Do you admit that the defendant does not owe any money to the plaintiff?" The response: "Admitted." The plaintiff argued, inter alia, that the defendant would not be prejudiced if the court were to grant the motion.

On December 27, 2016, the court entered an order stating that it would not entertain any arguments on the plaintiff's motion until all the posttrial briefs it had ordered on December 7, 2016, had been filed by the parties.

In the court's memorandum of decision filed on April 12, 2017, the court addressed, inter alia, the plaintiff's unjust enrichment claim. In addressing its arguments, the court noted certain instances in which the defendant had been benefited by the note executed by Robert. The court also acknowledged that the defendant conceded that she should reimburse the plaintiff for the taxes it and JPMorgan Chase had paid on her behalf. The court then addressed whether the plaintiff was entitled to withdraw and/or amend its responses to the requests for admission served on it by the defendant. The court concluded that, pursuant to Practice Book § 13-24 (a), a motion to withdraw and amend responses to requests for admissions could not be filed following trial, as in the present case, because § 13-24 (a) required the court to determine (1) that "the presentation of the merits of the action will be subserved thereby," and (2) the party who obtained the admission will not be prejudiced "in maintaining his or her action or defense on the merits." The court concluded that "it would be impossible for [it] to find that 'the presentation of the merits of the action will be subserved' by the granting of the plaintiff's motion" after trial. It further concluded that it would be "hard to imagine how the defendant would not be prejudiced at the time the case was tried because defense counsel had every reason to believe that the plaintiff's admissions were both operative and binding."

The court went on to state that "[i]f, after having amended its complaint, the plaintiff had wished to be relieved of the consequences of its admissions, it could have filed a timely motion, pursuant to Practice Book § 13-24 (a), to withdraw or amend its admissions. As noted . . . the court finds no authority permitting a party to seek withdrawal or amendment of admissions following the completion of trial." The court concluded that it did "not agree with the plaintiff that it can avoid the consequences of its admission that [the defendant] does not owe any money to the plaintiff simply because the money judgment which the plaintiff seeks is sought as damages on a claim based on equitable principles. Under these circumstances, the court is compelled to find that the plaintiff's responses to the requests for admissions preclude the plaintiff from any recovery on count three of the plaintiff's amended complaint, except

to the extent of the tax payments which the defendant has conceded she owes."

We briefly set forth the relevant legal principles that guide our discussion. Practice Book § 13-24 (a) provides: "Any matter admitted under this section is conclusively established unless the judicial authority on motion permits withdrawal or amendment of the admission. The judicial authority may permit withdrawal or amendment when the presentation of the merits of the action will be sub-served thereby and the party who obtained the admission fails to satisfy the judicial authority that withdrawal or amendment will prejudice such party in maintaining his or her action or defense on the merits. Any admission made by a party under this section is for the purpose of the pending action only and is not an admission by him or her for any other purpose nor may it be used against him or her in any other proceeding."

"A trial court has wide discretion in granting or denying amendments to the pleadings and only rarely will this court overturn the decision of the trial court. . . . To reverse a ruling of the trial court [denying] an amendment to the pleadings requires that the [plaintiff] make a clear showing of abuse of discretion." (Internal quotation marks omitted.) *JPMorgan Chase Bank, N.A.* v. *Eldon*, 144 Conn. App. 260, 280, 73 A.3d 757, cert. denied, 310 Conn. 935, 79 A.3d 889 (2013).

"In determining whether there has been an abuse of discretion, much depends on the circumstances of each case. . . . In the final analysis, the court will allow an amendment unless it will cause an unreasonable delay, mislead the opposing party, take unfair advantage of the opposing party or confuse the issues, or if there has been negligence or laches attaching to the offering party." (Citations omitted; internal quotation marks omitted.) *Kelley* v. *Tomas*, 66 Conn. App. 146, 178, 783 A.2d 1226 (2001).

Although the plaintiff attempts on appeal to distinguish the present case from certain cases cited in the court's memorandum of decision; see, e.g., *JPMorgan Chase Bank, N.A.* v. *Eldon*, supra, 144 Conn. App. 260; *Montanaro* v. *Balcom*, 132 Conn. App. 520, 521, 35 A.3d 280 (2011); it fails to cite to any case law that holds that a court's denial of a motion to withdraw and amend a party's responses to requests for admissions after the conclusion of trial constitutes an abuse of discretion.

Despite the plaintiff's contentions, the court correctly relied on Practice Book § 13-24 (a), which governs when a withdrawal or an amendment of an admission is proper, and noted that the defendant likely would have been prejudiced by allowing the plaintiff to amend its responses two weeks after the conclusion of trial. As the court made clear, the defendant had every reason to believe that the plaintiff's admissions were both oper-

ative and binding. See Practice Book § 13-24 (a) ("[a]ny matter admitted under this section is conclusively established unless the judicial authority on motion permits withdrawal or amendment of the admission"). As such, it is likely that these binding admissions affected how the defendant presented her defense.

It is also hard to imagine how the presentation of the merits of the action would be subserved by allowing a post hoc withdrawal or amendment of the plaintiff's responses in the present case. If the court had granted the plaintiff's motion two weeks after the close of evidence, it likely would have been necessary, at a minimum, to give the defendant the opportunity to conduct further discovery on the facts previously established by the plaintiff's admissions. This assuredly would have caused an unreasonable delay and would not have subserved the presentation of the merits of the action.[8] Although the plaintiff takes issue with the court's denial of its motion to withdraw and amend its responses, as the court correctly noted, after having amended its complaint to add the two additional counts, the plaintiff could have easily filed a timely motion pursuant to Practice Book § 13-24 (a) to withdraw or amend its admissions before trial. It failed to do so. Under the facts of this case, we conclude that the trial court did not abuse its discretion in denying the plaintiff's motion to withdraw and amend its responses to the defendant's requests for admission.[9]

IV

The plaintiff next contends that the court erred in concluding that the plaintiff's responses to the defendant's requests for admission precluded it from any recovery under its unjust enrichment count aside from the property tax payments that the defendant conceded she owed to the plaintiff. We disagree.

"Appellate appraisal of a trial court's finding of unjust enrichment is governed by the well established principle that the determinations of whether a particular failure to pay was unjust and whether the defendant was benefited are essentially factual findings for the trial court that are subject only to a limited scope of review on appeal. . . . Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion. . . . This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Internal quotation marks omitted.) *Laser Contracting, LLC* v. *Torrance Family Ltd. Partnership*, 108 Conn. App. 222, 230–31, 947 A.2d 989 (2008).

As our case law makes clear, the only remedy a plaintiff can obtain with respect to an unjust enrichment claim is "an award of money damages." (Internal quotation marks omitted.) Id., 233. In the present case, how-

ever, it is undisputed that the plaintiff's response to request number five of the defendant's requests for admission stated that the defendant did not owe the plaintiff any money. Practice Book § 13-24 (a) makes clear that "[a]ny matter admitted under this section is conclusively established . . . ." It was thus appropriate for the court to hold that the plaintiff was bound by its admissions and to limit its recovery under the unjust enrichment claim to property taxes that the defendant conceded in her posttrial brief that she owed to it.

We, therefore, conclude that the court did not abuse its discretion in limiting the award under the unjust enrichment count to the property taxes owed to the plaintiff.

V

The plaintiff's final argument is that the court abused its discretion in denying its motion for reargument. We disagree.

"[T]he purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . It also may be used to address . . . claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple . . . ." (Internal quotation marks omitted.) *Light* v. *Grimes*, 156 Conn. App. 53, 69, 111 A.3d 551 (2015). We thus review a trial court's denial of a motion to reargue for an abuse of discretion. Id.

This claim requires little discussion. Although the plaintiff contends that the court abused its discretion in denying its motion for reargument where it set forth legal principles that were not expressly considered by the trial court in its memorandum of decision, our review of the record discloses that the plaintiff's twenty-two page motion filed on May 1, 2017, was largely a request for the court to reevaluate the facts that it had before it, thus seeking an improper second bite of the apple. We, therefore, conclude that the court did not abuse its discretion in denying the relief sought in the motion for reargument.

The judgment is affirmed.

In this opinion, SHELDON, J., concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The named plaintiff, JPMorgan Chase Bank, National Association (JPMorgan Chase), is no longer a party in this matter. On August 4, 2015, JPMorgan Chase filed a motion to substitute Hudson City Savings Bank as the plaintiff, which the court granted on August 18, 2015. On August 9, 2016, M&T Bank filed a motion to substitute itself as the plaintiff noting that it was the successor by merger to Hudson City Savings Bank. That motion was granted on August 15, 2016. Accordingly, any reference in this opinion

to "the plaintiff" is to M&T Bank.

[2] The original complaint filed in this matter also named as defendants Robert J. Virgulak and the state of Connecticut, Department of Revenue Services. During the pendency of the case, the then plaintiff, JPMorgan Chase, withdrew the action against Robert J. Virgulak. Additionally, the state of Connecticut, Department of Revenue Services, which filed an initial appearance in the matter, was defaulted for failing to plead. Thus, any reference in this opinion to "the defendant" is to Theresa Virgulak.

[3] We note that the plaintiff's complaint sought reformation of the note, but not the deed. The trial court noted in its memorandum of decision, however, that "on page [seven] of its posttrial brief . . . the plaintiff concedes: 'Quite simply, there is . . . no support for any notion that the mortgage was ever intended to secure a note executed by [the defendant].' " The court noted that the plaintiff changed its position in its posttrial brief arguing "that the mortgage deed should be reformed 'to reference the fact that the mortgage executed by [the defendant] was to secure the note executed by Robert.' " This was not challenged by the defendant.

[4] The court also rejected the plaintiff's argument that the defendant had waived her right to rely on its responses when she failed to object to Wilkin Rodriguez' testimony disagreeing with those responses.

[5] After filing this appeal, the plaintiff filed a motion for articulation and a motion for rectification with the trial court. The trial court largely denied those motions, and the plaintiff filed two motions for review with this court pursuant to Practice Book § 66-7. This court granted the motions for review, but denied the relief requested therein on January 18, 2018.

[6] Indeed, the plaintiff similarly describes the court's decision in its appellate brief: "In other words . . . the trial court concluded that the mortgage deed the defendant executed had no meaning and was a nullity."

[7] Although the plaintiff argues that the subject mortgage was valid because it gave "reasonable notice" to third parties of the nature and amount of Robert's obligation; see *Dart & Bogue Co.* v. *Slosberg*, 202 Conn. 566, 579, 522 A.2d 763 (1987); we find its argument unpersuasive.

[8] To the extent that the plaintiff is claiming that the defendant was not permitted to rely on its responses to her requests because certain testimony elicited at trial contradicted the responses to the questions it sought to amend, we deem it inadequately briefed and, thus, abandoned. See *Clelford* v. *Bristol*, 150 Conn. App. 229, 233, 90 A.3d 998 (2014).

[9] To the extent that the plaintiff's few passing references in its appellate brief about the court's decision not to hold a hearing on its motion to withdraw and amend its responses can be read to challenge that decision, we conclude that the plaintiff abandoned such argument as a result of an inadequate brief. See *Ocwen Federal Bank, FSB* v. *Charles*, 95 Conn. App. 315, 329–30 n.14, 898 A.2d 197 ("[T]he parties must clearly and fully set forth their arguments in their briefs. . . . Analysis, rather mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly" [Citation omitted; emphasis omitted; internal quotation marks omitted.]), cert. denied, 279 Conn. 909, 902 A.2d 1069 (2006).

———————————